E. Howard Ringrose, J.
The First Religious Society in Whitestown, generally referred to and known as First Presbyterian Church of New Hartford, County of Oneida, New York (hereafter referred to as “Church”), brings this action in the nature of ejectment against Socony Mobil Oil Company (hereafter, “Socony”) to recover possession of certain real property in the Village of New Hartford, which has been in continuous occupancy and possession by Socony since September 21,1929, under the claim of title.
The premises which are the subject of this litigation were conveyed to the defendant under its then name, Standard Oil Company of New York, by full covenant deed dated September 17, 1929, given by John W. MacLean and Or ace MacLean, his wife, and John W. MacLean, as sole surviving executor and trustee of Charles MacLean, deceased, which deed was duly recorded in the Oneida County Clerk’s office on the 21st day of September, 1929, in Book 899 of Deeds at page 211.
Stipulated by the attorneys for the respective parties at the commencement of the trial were the following facts pertinent to the issues involved:
1. The First Religious Society in Whitestown is a religious corporation, duly organized under and by virtue of the Laws of the State of New York (L. 1784, ch. 18) under date of June 20, 1791, and that it has remained a corporation since that time and functioned as such without interruption and still is.
2. The certificate of incorporation of the First Religious Society in Whitestown was duly filed in the office of the County *417 Clerk of Herkimer County in the month of June, 1791, and that all records filed in the Herkimer County Clerk’s office prior to 1800 were destroyed in the courthouse fire of approximately that year.
3. That the record of the incorporation meeting of the plaintiff attached to the original complaint as " Exhibit A ” is a true copy of the original incorporation meeting of the First Religious Society held June 20, 1791, and that both the copy and the original be received in evidence.
4. The premises described in the complaint and presently occupied by the defendant are part of a parcel of land conveyed by Jedediah Sanger to the trustees of the plaintiff by conveyance dated June 22,1792, and recorded in Oneida County Clerk’s office in Book of Deeds 207 at page 123 and also by a conveyance from Jedediah Sanger to plaintiff on January 13, 1805, and recorded in the Oneida County Clerk’s office in Book 52 of Deeds at page 101.
5. The defendant has regularly paid to the plaintiff the annual rent of $76.17 per year on the 1st day of April in each year from April, 1930 until April 1, 1961.
6. Payments in the same amount were regularly tendered on the 1st day of April in the following years, 1961, 1962 and 1963 as ground rents under the conveyances, but were returned by the plaintiff to the defendant.
7. Abstract of title covering transactions of record from January 13, 1805 to June 3, 1963, stipulated in evidence as “ Exhibit 1 ”, subject to any challenge by the defendant to the validity of the items shown.
8. By deed dated January 13,1805 and recorded December 11, 1830 in the Oneida County Clerk’s office in Book of Deeds 52 at page 101, one Jedediah Sanger conveyed to the trustees of plaintiff certain premises in said deed described, being approximately 2 acres and 14 rods of land in what was then the Town of Whitestown, County of Herkimer, New York, now the Village of New Hartford, Oneida County, New York, being a plot of land presently bounded by the following streets in said Village of New Hartford, north by Genesee Street, east by Oxford Road, south by Park Street and west by Pearl Street.
9. The conveyance was by perpetual lease, the annual rent being one grain of wheat to be paid to said Jedediah Sanger, if demanded, on the 8th day of September in each and every year forever.
10. The parcel of land so conveyed by lease in fee or perpetual lease has been known as and is hereinafter sometimes referred to as the Sanger Donation.
*418 11. At the time of the conveyance of the Sanger Donation to the plaintiff, there were contained therein seven lots used for store or commercial purposes which fronted on Genesee Street in the Village of New Hartford, Lot Number 1 being bounded on the east by Oxford Eoad.
12. The map of the plot in litigation referred to as the William 1. Hopkins plan or map and filed in clerk’s office of the plaintiff has not been found among the records of the plaintiff corporation.
13. The premises described in the complaint include Lots 1, 2, 3, 4 and part of 5 as shown on said plan of said donation.
14. Lots 3, 4 and part of Lot 5 by various assignments and conveyances were assigned and conveyed to one John W. McLean.
15. Charles McLean died on October 7, 1877, testate and John W. McLean was appointed executor of the last will and testament of said Charles McLean with power of sale of testator’s real property at public or private sale.
16. The Town of New Hartford was erected out of the Town of Whitestown in or about the year 1827 and thereafter the plaintiff was popularly known as First Eeligious Society in New Hartford.
17. This action was commenced on March 21, 1962.
18. The defendant has paid all taxes from September 21,1929.
The challenge of the plaintiff to the validity of the defendant’s title is alleged in paragraph “ Seventeenth ” of its supplemental complaint as follows: “Seventeenth: That said perpetual leases and conveyances were void in that upon information and belief no order of any court or judge was made permitting the conveyance of the property of the First Eeligious Society in Whitestown to any of the individuals set forth in said conveyance. ’ ’
The answer of the defendant pleads generally that approval of the lease from the plaintiff was not required, or if it was, the plaintiff has failed to prove that it was not secured; adverse possession; Statute of Limitations; estoppel and laches.
The initial issue as to whether the legal status of the parties to this action is that of landlord and tenant or grantor and grantee under existing law is established by persuasive case law as that of landlord and tenant. (Bradt v. Church, 110 N. Y. 537-544; Munro v. Syracuse Lake Shore & Northern R. R. Co., 200 N. Y. 224, 232-233; Kavanaugh v. Cohoes Power & Light Corp., 114 Misc. 590, 623-624.) One of the Van Rensselaer leases was involved in Bradt v. Church (supra), wherein legal *419 relationship was pointed out by the court as follows (p. 544): ‘ ‘ That this lease was perpetual does not affect the case. These leases are of great antiquity. A discussion of their origin seems unnecessary here; for, by more or less recent decisions of this court, their validity and effect have been settled. But it may be pertinently added, perhaps, that whether we turn to the earlier periods of the civil law, or to the later history of the common law, we never find that it was supposed that the ownership of the grantor in such a lease was ever either extinct or dormant. It was kept alive (as here) by a power of re-entry on non-payment of the rent, a right of pre-emption in case of sale and a certain control over the use of the land. By nonpayment of the ground rent a forfeiture is worked and (aside from the rent) the chance of such a termination constitutes nearly the only interest left to the owner. The rights of the tenant, or grantee, were almost as extensive as those of an owner; but the obligations were always dominant. So the civil law regarded his interest; and it deemed him capable of selling the land to a buyer who would gain the same extensive rights, but, nevertheless, with the same obligation of annual rent payment.”
Also, see, Hosford v. Ballard (39 N. Y. 147); Kavanaugh v. Cohoes Power & Light Corp. (114 Misc. 590). The validity of perpetual leases was also upheld in Munro v. Syracuse Lake Shore & Northern R. R. Co. (200 N. Y. 224), wherein the court said (pp. 232-233): ' ‘ While the grant in question is not a lease in the ordinary sense, because it has no term of years, still it is in the nature of a lease reserving a perpetual rent. The consideration, as recited in the deed, is ‘ one dollar * * * and the covenants and conditions herein expressed to be kept and performed by the said second party. Aside from the conditions which the law requires a railroad company to perform when the right of way is acquired by condemnation, the provisions relating to fences and the stoppage of ears to receive freight and passengers, which are perpetual, and that relating to passes, which is for an indefinite period, are the main consideration for the right granted. Obviously the other covenants and conditions are comparatively slight in value. Rent is the compensation for the use of land and is payable either in money or in services, cattle, grain and the like according to agreement. Many early leases in this state were in the form of grants with rent reserved, payable by acts of service or in specific articles of the kind mentioned. While the rent reserved in the case before us was perpetual in part and indefinite as to the rest, *420 still the reservation was in a conveyance not for a term of years, or for life, but forever. All the rent was perpetual in principle because the deed was perpetual. 1 Perpetual rents are covenants real which run with the land, and are binding upon the heirs and assigns of the covenantor successively during their respective ownerships.’ (Fowler’s Real Property Law, 189, 197.) The grant in question falls within the principle of the noted Van Rensselaer cases which the learned author cites to support the proposition quoted, and which he says ‘ are among the most interesting and instructive in our judicial history, and justly entitled to be regarded as among the most wisely decided cases of any age or country. ’ ”
The plaintiff urged on the trial that the defendant failed to establish title to Lots 2 and 3. The abstracts of title in evidence in fact indicate a lapse in the chain of title. However, on August 30, 1929, the trustees of plaintiff executed an agreement which recites the contemplated conveyance by MacLean to defendant and reads in part as follows: “ the premises shown on a map made by Kemper-McLoughlin Co., Inc., civil engineers, and about to be conveyed by the said MacLean to the Standard Oil Company of New York (plaintiff herein) are leased under and by virtue of the various leases shown above, and the same and each of them is hereby ratified, confirmed and approved and ‘ a blueprint of said plot of land about to be conveyed is hereby attached marked “ A ”.’ ” The map referred to in the above agreement delineated the boundaries of the plot to be conveyed including Lots “2” and “ 3 The execution of the agreement was duly authorized by the board of trustees of plaintiff.
At the outset, it will be noted that it was not until 1953 that court approval of leases by religious corporations was required and then only for terms in excess of five years. (L. 1953, ch. 722.) Also, see, Voorhees v. The Presbyterian Church of Amsterdam (8 Barb. 135, 147-148).
Significant in the evaluation of the issues thus raised are the minutes of the trustees on January 16, 1804, called to consider a plan for the sale of lots on the Common belonging to the plaintiff, the preamble of which reads as follow's: “A Meeting of the Trustees and Committee of the First Religious Society in Whitestown was holden at the House of Elnathan Andrews on the 16th day of January 1804 for the purpose of digesting a plan for the Sale of Lots on the Common belonging to the Society aforesaid agreeable to a plan lately made by William I. Hopkins also the height of such Buildings as shall be placed thereon.”
*421 On the back page of this exhibit are certain entries relating to the sale of the lots contemplated by the resolution of the board of trustees, as follows:

It reasonably may be inferred from the foregoing entries that Lots 2 and 3 were conveyed by the plaintiff by perpetual lease. The plaintiff admits having in its possession a perpetual lease to Lot 3 which it claims was never delivered, or if it was delivered, it was subsequently surrendered to the plaintiff. If the inference of execution and delivery of leases to Lots 2 and 3 logically may be drawn from the above entries and the agreement, then the relationship of landlord and tenant prevails, the landlord having reserved the right of re-entry upon default in the payment of the specified annual rent, which has not occurred.
It is urged by the defendant that if the relationship of landlord and tenant was not created, then the defendant has acquired title by adverse possession. (Conde-Nast v. Town of North Hempstead, 160 Misc. 267, 282.) The defendant, however, has regularly paid to the plaintiff the ground rents reserved in the perpetual leases and consolidated by the agreement, thus recognizing the proprietary interest of the plaintiff in the ground rents. The claim of title by adverse possession, therefore, has no basis in law or equity on which to rest.
There was no proof that the agreement was illegally adopted by the board of trustees or that the board of trustees did not have legal authority to execute it.
The defendant, in reliance upon the representations contained in the agreement executed by the plaintiff and delivered concurrently with the deed, paid $30,500 for the property, has expended upwards of $36,000 in improvements, and has paid $27,000 in taxes since acquiring title. It also has regularly paid *422 or tendered to the plaintiff the annual rent as consolidated in the agreement.
The agreement between the trustees of plaintiff and John W. MacLean (sometimes spelled McLean), the defendant’s grantor, was executed on August 30, 1929, and the deed from the MacLeans to the defendant was dated September 17, 1929, and acknowledged September 21, 1929.
It is self-evident, from the contents of the agreement, that it was executed for the purposes of removing any cloud on MacLean’s title to the lots in question, to consolidate the rents, and adopt a new map for reference wherein all of the lots were shown as a single plot and the boundary lines of the plot established. As a consequence of the covenants in the agreement confirming MacLean’s title to the lots and the purchase by the defendant in reliance thereon, the plaintiff is estopped from asserting title adverse to that of the defendant. (Croce v. Fischer, 1 AD 2d 834; Triple Cities Constr. Co. v. Maryland Cas. Co., 4 N Y 2d 443, 449; Werking v. Amity Estates, 2 N Y 2d 43, 53; New York Rubber Co. v. Rothery, 107 N. Y. 310-316.)
This is not a case where the possession and occupation of the premises was illusive, constructive or furtively exercised. On the contrary, the occupation has been open and notorious and known to the members of the plaintiff and to the members of its board of trustees for upwards of 30 years.
The statutes and case law cited by the plaintiff were examined and found not to be in conflict with the disposition about to be announced. The defendant can be evicted from the property in question only upon its default in payment of the ground rents.
It follows that the motion of the defendant at the close of the evidence dismissing the complaint should be granted.