## PIONEER GRAVEL EQUIPMENT MFG. CO. v. DIAMOND IRON WORKS.

### No. 9962.

Circuit Court of Appeals, Eighth Circuit.
July 5, 1934.

A. C. Paul, of Minneapolis, Minn. (Harold Olsen and Paul, Paul & Moore, all of Minneapolis, Minn., on the brief), for appellant.

Frank A. Whiteley, of Minneapolis, Minn., for appellee.

Before STONE and GARDNER, Circuit Judges.

STONE, Circuit Judge.

This is an appeal by plaintiff below in a patent infringement suit.

This patent covers a portable machine for making and handling aggregates used in highway construction. "Aggregates" is the name for materials consisting largely of rock, gravel, and sand used for the construction and surfacing of highways or, as a component part, in forming concrete for such construction. Practical necessity requires that such aggregates do not exceed in size a definite standard. The purpose of this machine is to furnish aggregates not greater than the required maximum size. As the material comes from the bank it is of various sizes, some of which may be usable and some excessive. The general method of this machine is to pass this bank material over a screen through which may drop material of proper size and off of which will pass larger material to a crusher which will reduce it to proper size.

The patent presents a preferred and alternative form of machine with claims covering each. This suit involves the alternative form covered by claims 11, 12, 14, and 15 of the patent. The operation of the machine under the preferred form should be first stated as the alternate form is more by way of additional elements accomplishing additional things than a different form (under the general specifications) accomplishing the same things. The preferred form is as follows: Material is taken from the bank and conveyed into a hopper provided with an iron grid for the purpose of preventing pieces too large to be crushed passing through; such oversized pieces being removed by an operator from this protecting grid. From this hopper the material passes down upon a screen which is rather rapidly oscillated for the purpose of shaking through the screen holes all material not too large to pass therethrough. Such material as is too large to pass through the screen travels to the farther end of the screen where it is conducted into

a crusher. Underneath the screen and extending underneath the outlet of the crusher is a slightly curved and slanted apron for the purpose of catching the material passing through the screen and also that passing through the crusher. Thus all of the material coming into the machine, whether passing through the screen or through the crusher, finds its way to this apron from which it falls onto a bucket conveyor carrying it to a storage bin or to trucks positioned for loading therefrom. The alternative form (here in suit) involves the purpose of more exactness in sizing the material than the preferred form and the additional mechanism therefor. That mechanism is as follows: Instead of the material, which passes through the crusher, falling onto the apron, it falls upon a chute which carries it to a bucket elevator which, in turn, raises it to where it is dumped upon the screen. Thus all material (including that passing through the crusher) must pass through the screen before it reaches the apron and from thence passes away for use. The patent provides that this chute can be withdrawn. Thus the machine may be made to operate in either of the two above methods —depending on whether the chute is put in place or is removed.

The trial court found these claims invalid because of anticipation in the art and because the disclosed structure was inoperative. Also, that if the claims were valid, they were not infringed by the accused machine. All of these matters are involved in this appeal. We have carefully examined the entire record as to the issues of anticipation and operativeness of construction. However, it seems so clear to us that there is no infringement and as that issue completely disposes of this appeal, we see no purpose in an already overburdened court discussing and determining validity of these claims when such is unnecessary to disposition of the appeal. Therefore, we shall direct our attention solely to the existence or not of infringement.

The cardinal difference between the above method of alternate operation in the patent and the method used by appellee is that appellee employs no apron but has beneath the screen a hopper which conducts material passing through the screen to a conveyor which in turn carries it to a storage bin or loading trucks. The question of infringement here is, therefore, whether the hopper used by appellee is an equivalent, under the patent, for the apron.

■ The first step in answering this question is to determine the range of equivalents justly due the patent. The trial court found the patent invalid because of anticipation in the prior art. It determined that appellant came into a crowded art. After examination of the record as to this matter of validity, the best that can be said for appellant is that the question of validity is an extremely narrow one. See Tropic-Aire v. Sears Roebuck & Co., 44 F.(2d) 580 (C. C. A. 8) and Midland Flour Milling Co. v. Bobbitt, 70 F.(2d) 416, this court March 23, 1934. Without determining the validity of the patent, by our conviction that such validity is, at best, a very close question for appellant, we are compelled to a narrowly restricted range of equivalents in determining infringement.

■■ Although restricted in range of equivalents, yet appellant is entitled to such reasonable range as the teachings of the patent justify. For this purpose we go to the specifications to ascertain what new thing the patentee revealed as his discovery and what place therein the apron occupied. The entire revelation here pertinent may be concisely stated as follows. The specifications are clear that the apron was intended primarily to afford a receiving receptacle for all of the aggregate material passing through the machine. It was made as an apron instead of some other form because there were two outlets of material from the machine; one being from the screen and the other from the crusher. To furnish one receptacle for both outlets it was necessary for that receptacle to be placed under the screen and also under the outlet from the crusher. When the patentee desired to cover the further situation of passing the crushed material through the screen in order more certainly to insure proper size of the aggregates (by passing all material through the screen), he did this by adding to the machine the cut-off chute below the crusher outlet and the elevating mechanism. The patent expressly states that this secondary form is for use (patent p. 2): "Under certain conditions, depending chiefly on the nature of the material handled, and the exactness with which the maximum size of particle in the finished aggregate must be limited, it is desirable to return the discharge from the crusher to screen 18."

It is obvious that the use of this secondary form was not to replace the preferred form, but was as an added feature which could be used or not, as circumstances demanded. This is made clear by the above quotation and by the further statement in the patent that the elevator "may be rendered operative or inoperative, simply by removing or replacing chute 86." Immediately following this last-quoted statement is the significant expression,

"Whether it [the elevator] is employed or not, the discharge from apron 58 will be the finished aggregate ready for use." From these statements in the specifications it is clear that the patentee contemplated that his machine should, at all times, have a receptacle capable of receiving from both the screen and the crusher. Without this apron or a similar device this essential part of the plan would be impossible. Unless the hopper used by defendant could perform these functions it cannot be regarded as an equivalent within the patent. Obviously, the hopper cannot receive any material direct from the crusher but only such as passes through the screen.

It is argued by appellant that when the secondary form is used, the chute prevents any material from passing to the apron and, therefore, that this function of the apron is nullified. This is true, but the revelation contemplated that the chute should be removable so that the machine could be operated in either way. The patent makes no suggestion and does not teach that a hopper receiving material only from the screen may be substituted if the secondary form is used. In fact, to substitute the hopper makes it impossible to use the machine in the preferred form, to which the secondary form is merely an addition. Such a change cannot be construed as a mechanical equivalent and within the teaching of the patent. It is directly contrary to that teaching. Not being a mechanical equivalent and since the apron, an essential element of the disclosure and of the combination, is entirely lacking, appellee's device is not an infringement.

The decree should be and is affirmed.