David O. Boehm, J.
This action in ejectment was tried before the court without a jury.
The plaintiffs, Alderman F. Gleason and Jessie E. Gleason, his wife, are the record owners by the entirety of certain lake frontage real property located on the east side of Keuka Lake in the Town of Wayne, Steuben County, New York, under deed dated January 27, 1940 and recorded in the Steuben County Clerk’s Office in Liber 476 of Deeds, page 488. At the time plaintiffs acquired the premises, it was wholly unimproved.
Thereafter, in November, 1941, plaintiff Alderman F. Gleason entered into a lease with the defendant Kenneth E. Tompkins, whereby the premises described therein were leased to the defendant for an annual rental of $35 for five years commencing April 1, 1942 and ending March 21, 1947. The lease, by its terms, permitted the defendant to erect a cottage, garage and boathouse on the premises, with the proviso that these structures could be removed by Tompkins upon the expiration of the lease or any renewal thereof. Tompkins was obligated under the lease to pay the real estate taxes assessed to the property and attributable to the building improvements. Plaintiff Alderman Gleason remained responsible for the balance of the taxes attributable to the unimproved land.
The lease further provided: "Said party of the second part [defendant] may renew this lease for further terms of five (5) years each upon the same terms and conditions, by notifying said party of the first part [plaintiff Alderman Gleason] in *176 writing thirty (30) days or more before the expiration of this lease April 1, 1947, or of any renewal thereof.”
The lease also contains a provision that: "Should the party of the first part or the party of the second part die, this lease shall be binding upon the heirs of both the party of the first part or the party of the second part or their assignees.”
Thereafter, Tompkins entered upon the premises and over a period of time constructed a cottage, two-car garage, children’s playhouse, septic system, dock and boat hoist and did extensive landscaping.
Upon completion of the initial term of the lease, Tompkins renewed for a second term of five years. On July 10, 1953, during the second renewal period, the lease was amended to include an additional 10 feet on the northerly side of the property and the annual rental was increased. The lease and amendment thereto were recorded on September 4, 1953 in the Steuben County Clerk’s Office in Liber 657 of Deeds, page 498. Thereafter the lease was renewed for three additional five-year periods through April, 1972.
In February and March, 1972, the plaintiffs decided to transfer the subject property to their son and discussions were conducted with Tompkins for the purpose of obtaining his consent for such a transfer, required by paragraph 7 of the lease. Tompkins had a consent prepared by his attorney but it was never signed by Gleason.
In April, 1972, Tompkins transmitted a letter to the plaintiffs renewing the lease for an additional five-year period ending in April, 1977, together with a $150 check for one year’s rent from April, 1972 to April, 1973. This check was retained by plaintiffs for about six months and then apparently destroyed. The 1973 and 1974 rent checks were also mailed to the plaintiffs when due but were returned to Tompkins uncashed. No formal demand was made upon Tompkins to vacate the premises prior to the commencement of this action nor did he ever receive notice of any kind of cancellation of the lease.
Although plaintiff, Jessie Gleason, did not execute the lease, she testified that she was aware of its existence and was familiar with the improvements constructed by the defendant during the many years of his occupancy. Her testimony established that she knew she owned the leased property together with her husband and made no effort to interfere with or prevent the defendant from exercising his use, control or *177 enjoyment of the demised premises or constructing the improvements thereon.
The fundamental question presented by the pleadings and proof is whether the lease between the parties was intended through the vehicle of the renewal option clause contained in paragraph 6 to create a lease in perpetuity.
It is the law in New York, as elsewhere, that a lease may be created in perpetuity (First Religious Soc. in Whitestown v Socony Mobil Oil Co., 44 Misc 2d 415; 33 NY Jur, Landlord & Tenant, §46). However, perpetual renewals are not favored and a lease may not be construed to confer such a right unless by its terms the grant is so plain and unequivocal as to leave no doubt that such was the intention and purpose of the parties. The burden of establishing the necessary intention is of necessity upon the party seeking to establish a perpetuity (Levy v Amelias, 207 Misc 880, affd 1 AD2d 755; Geyer v Lietzan, 230 Ind 404; Hallock v Kintzler, 142 Ohio St 287; 31 ALR2d 623, 624).
Reading the provisions of the lease, it is clear that its language is not without ambiguity in regard to the lessee’s perpetual right to renew. There is an absence of language in paragraph 6 or elsewhere in the lease implying perpetuity such as use of words like "perpetual”, "forever”, "for all times”, "in perpetuity”, "successive”, "endless periods” or "everlasting”. These words in a lease have significance in finding an intention to create a renewal in perpetuity (Clinch v Pernette, 24 Can SC Rep 385; Blackmore v Boardman, 28 Mo 420; McLean v United States, 316 F Supp 827; Tischner v Rutledge, 35 Wash 285).
And unlike the situation in Storms v Manhattan Ry. Co. (178 NY 493) and Burns v City of New York (213 NY 516), the lease here does not provide that the stipulation for renewal is to continue in force at the end of each term, or be incorporated in the renewal lease. Such covenants are regarded as being of considerable importance in determining that perpetual or indefinite renewals were intended. One New York case has held that in order to have a further renewal after the renewal provided for in the original lease, there must be specific language to the effect that the option to renew itself is itself renewed (Matter of Albany Sav. Bank v Gigliotti Motor Sales of Utica, N. Y., 162 Misc 468).
Thus, provisions in the original lease that the lease may be renewed or continued with the same or similar covenants, *178 conditions, terms, agreements, etc. do not extend to the covenant for renewal (Pflum v Spencer, 123 App Div 742; Jones v Cocomitros, 114 Misc 447, revd on other grounds 198 App Div 966).
And it was early held that a covenant for renewal, or for an additional term, should not be held to create a right to repeated grants in perpetuity, unless some sufficient consideration for such grant is made to appear, and the parties have expressed themselves upon this subject in language devoid of all ambiguity (Muhlenbrinck v Pooler, 40 Hun 526).
However, there is more recent authority to the contrary, holding that a right to perpetual renewals is conferred by a provision in a lease for one year giving the lessee " 'the privilege of renewing this lease from year to year, upon notice to that effect in writing, given on or before the day of the date of the expiration of each and every year’ ” and which in addition gives the lessee the privilege of purchasing the property at any time during the continuance of the lease or the "renewals” thereof (Hoff v Royal Metal Furniture Co., 117 App Div 884, affd without opn 189 NY 555).
As an aid to interpretation, the court may take into consideration the practical construction put upon the lease by the parties, as for example, renewal of the lease by the parties from time to time in their course of dealing with each other (Burns v City of New York, 213 NY 516, supra; Vokins v McGaughey, 206 Ky 42).
Consideration must be given to the uncontroverted testimony of the parties that in their course of dealing the lease was renewed for five consecutive terms covering a period of 25 years. However, the conclusion to be drawn from this conduct need not be, as defendant suggests, that perpetual renewal of the lease was intended by the parties.
On the contrary, it would appear that a more practical and reasonable construction of the lease requires a finding that the parties intended that the lease be renewable for successive five-year terms only for the life of the lessee. The lease by its terms is personal to defendant Tompkins and measured by his life. The provisions in paragraph 8 wherein the lease is made binding upon the heirs and assignees of the parties mean only, insofar as the lessee is concerned, that he may renew so long as he lives and if he dies within one of the renewal terms the lease will continue and both protect and bind his heirs and assignees until the renewal term expires.
*179 A consistent conclusion was reached in Alexander v Herman (3 Ont W N 755, 2 DLR 239) under circumstances similar to the present case, wherein the court found not only that the right to renew ran only to the tenant personally, but that the right could be exercised only while the tenant lived and continued on the property.
The subject lease is not to be construed as one in perpetuity and, although of indefinite duration, will, if continually renewed, reach termination upon the expiration of the renewal term in which Tompkins dies.
A further question raised here, and one which must be resolved to determine whether Tompkins has a valid and enforceable lease for the period 1972-1977, is whether the failure of Jessie Gleason to join in execution of the lease will avoid the lease and entitle her to joint occupancy of the property.
It is the nature of a tenancy by the entirety that the husband and wife are each seized of the entire estate, each owning not an undivided part but the whole estate (Matter of Maguire, 251 App Div 337); and it is the general rule that a tenant by the entirety may not dispose of the interest of his cotenant (Hiles v Fisher, 144 NY 306).
However, when a party with knowledge or sufficient notice of his rights freely does what amounts to a recognition or adoption of a contract as existing, or acts in a manner inconsistent with its repudiation, he is said to have accepted it and is thereafter equitably estopped from repudiating it, although the contract may have been void or voidable (21 NY Jur Estoppel, § 19, p 26).
The purpose and effect of an equitable estoppel is not to work a positive gain to the other party but to prevent a party from denying the effect of his statements, actions or nonactions which have influenced the conduct of another (Parsons v Lipe, 158 Misc 32, affd sub nom Parsons v First Trust & Deposit Co., 243 App Div 681, affd 269 NY 630) and, when so applied, this principle can be as effective to create a real property contract or conveyance as a written instrument conveying or granting an interest in land would be from the party estopped (Nissen v McCafferty, 202 App Div 528). Nor does section 5-703 of the General Obligations Law prevent application of this rule to matters involving interests in real property (Altman v McMillin, 115 App Div 234; Spicer v *180 Connor, 148 App Div 334; Western N.Y. & Pennsylvania Ry. Co. v Rea, 83 App Div 576; Levy v Rothfeld, 271 App Div 973).
A case much in point is that of Singleton v McGurk (117 Misc 340) where an adjoining landowner was granted the right to maintain a water pipe on the grantor’s lot. The grantor did not disclose that his wife was a part owner of the lot and the grantee, ignorant of this fact, was led by the conduct of the grantor and his wife at the time of the making of the agreement and paying the consideration therefor, to believe that the grantor was the sole owner. The wife with full knowledge of the facts had for years refrained from making any objection to the laying of the pipes or to their maintenance or the supplying of water through them. The court held that her consent was thereby presumed and the husband was estopped from asserting that her consent was necessary and had never been obtained.
The rule involved in the Singleton case has been applied to similar fact situations where the husband and wife are owners of real property as tenants by the entirety and only one of the owners has executed a lease purporting to rent the property (Farr v Newman, 18 AD2d 54, affd 14 NY2d 183; Trepel v Sendrovitz, 119 NYS2d 374; Matter of Di Marti, 72 Misc 148; Shimer v Ronk, 139 App Div 137).
In the circumstances of the present case, to permit the plaintiff, Jessie E. Gleason, to avoid the lease and enter into joint occupancy with Tompkins would work a grave and impermissible injustice.
Mrs. Gleason, by her testimony, has established that she was aware of her ownership of the property and the lease arrangement between her husband and Tompkins which was "all right with her”. She has further stated that she was aware of Tompkins’ entry into the premises and the erection of the improvements thereon but that she made no effort to stop the work or remove Tompkins from the premises. In addition, Mrs. Gleason was aware of the annual rentals provided for by the terms of the lease and the increases which were made from time to time and, indeed, she herself received some of the rentals which she turned over to her husband.
Upon the facts found, it is concluded that Jessie Gleason acquiesced in the conduct of her husband and is estopped from denying the validity of the lease.
Moreover, the same conclusion will result when applying the principle of ratification to the facts. As in the case of *181 estoppel, an act such as acceptance of the benefit of a bargain may be deemed a ratification to the same extent as a clear expression of assent, even when interests in real estate are involved (Maloy v Montgomery, 246 App Div 482, affd 272 NY 630; Hermes v Title Guar. & Trust Co., 282 NY 88). In taking rent from the defendant, Mrs. Gleason has undoubtedly accepted the benefits of the bargain made by her husband and has thereby ratified the lease.
Accordingly, judgment is awarded in favor of the defendant and the plaintiffs’ complaint is dismissed.