Jerry J. BONNER and Merline Bonner, Plaintiffs,

v.

**OKLAHOMA ROCK CORPORATION, Defendant.**

**No. 78986.**

Supreme Court of Oklahoma.

Oct. 12, 1993.

Dan Little, Little, Little, Little & Windel, Madill, for plaintiffs.

John A. Claro and Bert Barefoot, Jr., Claro and Johnston, Oklahoma City, for defendant.

OPALA, Justice.

The United States District Court for the Eastern District of Oklahoma certified for this court's answer the following question posed pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 *et seq.*:

> "What rights, if any, does the defendant, Oklahoma Rock Corporation, ́ a Texas Corporation,[1] presently hold concerning the subject tract,[2] by reason of the document in issue?"

 Our answer is that unless Oklahoma Rock Corporation's [Oklahoma Rock's] *in situ* interest is found to be adversely affected by the Bonners' (plaintiffs') *attempted* federal-court claim [3] for rescission—upon failure of consideration—of their contract (with Southwest Stone) [4]

---

**1.** This action falls within the federal court's *diversity jurisdiction,* 28 U.S.C. § 1332. The certified question seeks an answer based upon the law of Oklahoma, where the "subject tract" is located and where the agreement's performance was to take place. We thus take as a given that the transaction in suit is governed by Oklahoma law.

**2.** We assume for purposes of answering the question posed that the "subject tract" is the property listed in Exhibit "A" to the disputed document, with the exception of property either disclaimed by Oklahoma Rock or taken by condemnation.

**3.** This court needs no explicit grant of jurisdiction to answer certified questions from a federal court; such power comes from the United States Constitution's grant of state sovereignty. By answering a state-law question certified by a federal court, we may affect the outcome of

federal litigation, *but it is the federal court who hears and decides the cause.* Shebester v. Triple Crown Insurers, Okl., 826 P.2d 603, 606 n. 4 (1992); Scott v. Bank One Trust Co., N.A., 62 Ohio St.3d 39, 577 N.E.2d 1077, 1079–80 (Ohio 1991). "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state." Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194 (1938). Certification assures that federal courts are apprised of the *substantive norms of the Oklahoma legal system.*

**4.** *We answer the question posed based upon the assumption that Oklahoma Rock received the same interest that the Document conveyed to Southwest Stone and express no opinion on Oklahoma Rock's bona-fide-purchaser defense to the Bonners' claim for rescission, on failure of consideration, of their contract with Southwest*

which underlies the critical Document,[5] Oklahoma Rock is vested with *title* to all the gravel, stone, rock, shale, limestone and other forms of rock used to produce aggregate [6] [the substances or rock] *underlying and situated* upon the subject tract (with the exception of substances the Bonners personally may use in the property's improvement), subject to specified post-severance payments on a tonnage basis.[7]

*Stone which underlies the conveyance in contest.* The order certifying the question states:

"While various assignments have been executed since 1965, the parties through the pretrial order do not place in issue ownership of the rights conveyed. *The defendant, Oklahoma Rock Corporation, holds whatever interest was conveyed and may continue to exist by reason of the execution and delivery of the document by the Bonners to Southwest Stone Company on December 17, 1965."* [Emphasis supplied.]

5. The text of the instrument called "Document" is set out *infra* note 10.

6. Rock, gravel and sand used for the construction and surfacing of highways or as a component in forming concrete for road-building are called aggregate. *Pioneer Gravel Equip. Mfg. Co. v. Diamond Iron Works,* 72 F.2d 161 (8th Cir.1934).

7. The Bonners urge that the doctrine of adverse possession entitles them to cancellation of Oklahoma Rock's "easement." Whether Oklahoma Rock's rights in the property have been lost by adverse possession is a fact question which requires the application of *settled Oklahoma legal norms. See Nilsen v. Tenneco Oil Co.,* Okl., 614 P.2d 36, 40 (1980); *Mohoma Oil Co. v. Ambassador Oil Corp.,* Okl., 474 P.2d 950, 960 (1970). *We do not view that question as fairly comprised within that which stands posed by the federal-court certification.*

8. Southwest Stone *is* not a party to this action.

9. Both writings were signed on December 17, 1965; the Deed lists the Document as an exception.

10. The Document provides:

"Easement"

"Jerry J. Bonner and Merline Bonner, Grantors, do hereby grant, bargain, sell, assign and convey unto SOUTHWEST STONE COMPANY, a Texas Corporation, Grantee, with principal offices in Dallas, Texas, its successors and assigns, all of the gravel, stone, rock, shale and limestone and other forms of rock

## I.

## THE GENESIS OF THE CONTROVERSY AND THE ANATOMY OF FEDERAL LITIGATION

In 1965 Southwest Stone Co. [Southwest Stone] [8] conveyed by Joint Tenancy Warranty Deed [the Deed] to plaintiffs Jerry and Merline Bonner [Bonners] three tracts of land in Atoka County, reserving a one-eighth interest in all oil, gas and other minerals. The Bonners executed and delivered to Southwest Stone [9] a document called an "easement" [the Document].[10]

used to produce aggregate which may be situated or found on the property described in Exhibit A hereto attached and made a part hereof for all purposes (hereinafter called 'the property').

"It is the intent and purpose of this instrument to give the Grantee, its successors and assigns, a perpetual and exclusive right to go upon the property to test, mine, quarry and remove such gravel, stone, rock, shale, and limestone and to process the same thereon. Grantee shall have the right to use whatever surface is necessary for the erection of buildings, plants, machinery, appliances, and roadways for the mining, quarrying, testing, and processing operations on this property, and shall have the right to remove any and all such improvements placed upon the property.

"Grantors reserve unto themselves, their heirs and assigns, the free use of the property for any purpose other than mining, quarrying and processing of gravel, stone, rock, shale and limestone, provided however, Grantor's use shall not be inconsistent with nor interfere with the rights herein granted to Grantee. Grantors further reserve unto themselves, their heirs and assigns, the right to remove and use such of the gravel, stone, rock, shale and limestone as they may deem necessary or desirable for their personal use in improvement of the property.

"As part of the consideration for this conveyance, Grantee shall pay unto Grantors, their heirs and assigns, a royalty amounting to two (2) cents for each ton (2,000#) of gravel, stone, rock, shale, and limestone mined, produced and sold from the property. Said royalty shall be due and payable upon the sale of such gravel, stone, rock, shale and limestone by Grantee, its successors or assigns.

"Grantors expect and understand that Grantee, its successors and assigns, will carry on operation on and in the vicinity of the premises described in Exhibit A, involving the quarrying, crushing, screen[ing], blasting for, processing and handling of aggregate and the processing of asphalt and asphalt products. It is expressly agreed as a covenant running with the land, binding upon Grantors, their

Both the Deed and the Document were *recorded*. Oklahoma Rock later acquired by various assignments whatever interest the Bonners conveyed to Southwest Stone.[11] Neither Southwest Stone nor its successors has mined any substances on the property. The Bonners have never demanded that either Oklahoma Rock or its predecessors begin mining operations.

When this proceeding to quiet title, cancel an "easement," and restrain Oklahoma Rock from going upon the Bonner's property to extract, process and sell the substances was removed from the District Court, Atoka County, to the United States District Court for the Eastern District of Oklahoma, Oklahoma Rock counterclaimed

> heirs and assigns, that Grantee, its successors and assigns, shall have no liability, in law or in equity, for or on account of fumes, vapors, dust, particles or matter or other deposits, noise or vibrations on or above the premises described in Exhibit A and the improvements thereon resulting from or alleged to result from such operations of Grantee, its successors and assigns; and there is hereby given to Grantee an easement over and upon the premises described in Exhibit A as to such fumes, vapors, dust, particles or matter or other deposits, noise and vibrations which may result from the Grantee's operations as aforesaid on or in the vicinity of the land described in Exhibit A.
>
> "It is expressly understood that any buildings, plants, machinery, appliances or products placed upon the property by Grantee, its successors and assigns, shall *remain its property.* In the event taxes are assessed by reason of the improvements placed upon the property by Grantee, then in such event, Grantee shall cause the improvements to be assessed separately and pay the taxes attributable thereto. In the event the value of the real estate for tax purposes is increased by reason of the operation of Grantee, then in such event, Grantee shall pay the increase in taxes attributable solely to such operation. [Emphasis in original.]
>
> "The rights and obligations created hereunder are assignable by either party.
>
> "Signed and delivered this 17th day of December, 1965.
>
> Jerry J. Bonner
> Merline Bonner
>
> "ACKNOWLEDGED on this 17th day of December, 1965, by Jerry J. Bonner and Merline Bonner, husband and wife, before Barbara Jackson, Notary Public, County of Dallas, State of Texas.
>
> (SEAL) Commission expires June 1, 1967
>
> "The following described tracts of land situated in Atoka County, Oklahoma:

to quiet its title in the substances. The parties brought cross-motions for summary judgment, which were denied. After a nonjury trial, the federal district court certified for this court's answer the question now before us.[12]

## II.

## THE DOCUMENT IN CONTEST IS A CONVEYANCE *IN PRAESENTI* OF THE EARTHY SUBSTANCES *IN SITU*[13]

The parol evidence rule teaches that unless fraud or mistake is involved pre-contract negotiations and oral discussions are merged into, and superseded by, the terms of an executed writing.[14] While

"Legal Descriptions Omitted"

**11.** *See supra* note 4.

**12.** The record before us shows that the certifying court *initially* considered the following questions to be unsettled under Oklahoma law: (1) whether the Document is a *deed,* conveying a *fee simple interest in the rock* or whether it is a *perpetual lease subject to abandonment,* (2) whether, should the instrument be construed as a *lease* or *profit à prendre,* the lessor must give *notice* to the lessee as a *prerequisite for declaring the lease abandoned,* and (3) whether, should the instrument be construed as a *deed,* the underlying contract would be subject to *rescission for failure of consideration.* Since we conclude the Document is *not* a lease, we need not reach the second question for discussion or resolution. For the answer to the third question, *see* part IV.

**13.** The literal meaning of *"in situ"* is "in the natural or original position." WEBSTER'S THIRD INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE UNABRIDGED, p. 1170 (1961). In the context of the question posed, it means that *title to the substances has passed while they remain embedded in the earth.*

**14.** 15 O.S.1991 §§ 137 and 155; *Mercury Inv. Co. v. F.W. Woolworth Co.,* Okl., 706 P.2d 523, 529 (1985). Under the terms of § 137, referred to generally as the parol evidence rule, testimonial evidence may be admissible to vary or contradict the terms of a written contract when fraud, accident or mistake is relied upon for relief from the binding effect of a contract. *Snow v. Winn,* Okl., 607 P.2d 678, 682 (1980); *Dewberry v. Yellow Manufacturing Acceptance Corp.,* Okl., 396 P.2d 522, 524 (1964); *Lone Star Gas Company v. Oakman,* Okl., 283 P.2d 810, 813–814 (1955). Here, the parties have not re-

the practical construction of an agreement, as evidenced by the acts and conduct of the parties, may sometimes be available for the court's consideration in the event of an *ambiguity, the parties have stipulated* that the Document is *not* ambiguous,[15] conferring on the trial court—and hence on this court for purposes of answering the question posed—the power to construe the Document's meaning from its four corners.[16]

■ According to the Bonners, the Document does not convey all the solid earthy substances; rather, only those that have been "used to produce aggregate." They urge the Document gives Southwest Stone no more than the right to take *severed substances* and that mining must take place before title to the rock passes. Oklahoma Rock claims the writing is a mineral deed which conveys substances *in situ.*

■ The drafter labeled the Document an "easement." Although the name given to an instrument may be considered in determining the parties' intent, it is not controlling.[17] An easement is *a right to make*

*use of another's land* for some definite and limited purpose.[18] "Easement" is a misnomer here, since the Document's *clear, definite and unambiguous* terms *unmistakably* convey more than simply the *use* of the Bonners' land for rock mining.

The Document provides that the grantors (Bonners) *"grant, bargain, sell, assign and convey to the grantee (Southwest Stone, its successors and assigns ) . . . all of the gravel, stone, rock, shale and limestone and other forms of rock used to produce aggregate which may be situated or found on the property."* We must give these words their ordinary legal effect, which is to vest the grantee with an estate in the enumerated substances.[19] We are not persuaded that the Document conveys only "used" or severed rock.[20] Rather, the term "used to produce aggregate" modifies "other forms of rock" to help define the character of the last substance included in the conveyance. The latter is a catchall, to assure the conveyance of any rock of the same kind which may not have been named.

---

lied upon fraud, accident or mistake to vary the written terms of the Document.

**15.** *Stipulations are solemn admissions. Unless a court, upon request, finds a tenable legal ground for relieving one from the legal effect of a stipulation, such judicial admissions are generally binding and conclusive on the parties as well as on the court. State ex rel. Trimble v. City of Moore,* Okl., 818 P.2d 889, 894 n. 14 (1991); *Bill Hodges Truck Co. v. Gillum,* Okl., 774 P.2d 1063, 1068 (1989); *Nanonka v. Hoskins,* Okl., 645 P.2d 507 (1982); *City of Lawton v. Lewis,* Okl., 566 P.2d 133, 134 (1977); *Yamie v. Willmott,* 184 Okl. 382, 88 P.2d 325, 326 (1939).

**16.** *Courts may use the construction-of-contract rules to assist them in the interpretation of other writings. See Gray v. Stillman,* Okl., 365 P.2d 369, 372 (1961); *Kilgore v. Parrott,* 197 Okl. 77, 168 P.2d 886, 889 (1946); *Randolph v. Mullen,* 73 Okl. 199, 175 P. 512, 513 (1918). For our statutory rules for the construction of contracts, *see* 15 O.S.1991 §§ 151–157. The terms of § 153 are:

"For the purpose of ascertaining the intention of the parties to a contract, if otherwise

doubtful, the rules given in this chapter are to be applied."

**17.** *Panhandle Cooperative Royalty Co. v. Cunningham,* Okl., 495 P.2d 108, 113 (1972).

**18.** *Story v. Hefner,* Okl., 540 P.2d 562, 566 (1975).

**19.** The grant is to Southwest Stone, its successors and assigns. Nothing indicates that the grant is either conditional or defeasible before the exhaustion of the rock supply. The terms of 60 O.S.1991 § 23 are:

"Every *estate of inheritance* is a *fee,* and every such estate, *when not defeasible or conditional,* is a *fee-simple* or an absolute fee." [Emphasis supplied.]

**20.** If the parties had agreed the rock was to be severed by the seller (the Bonners), the UCC might govern their rights. *See* 12A O.S. 1991 § 2–107 which provides in pertinent part:

"(1) A contract for the sale of minerals or the like, including oil and gas . . . to be removed from realty is a contract for the sale of goods within this article *if they are to be severed by the seller. . . .*" [Emphasis supplied.]

██ A lease is a grant of the land's use for a *definite term,*[21] which must be *less time than the lessor has in the premises.*[22] The four corners of the Document yield *no* indication that the grant is for a term.[23] Neither do they reveal other characteristics expected from and customarily found in a lease.[24]

██ A profit, or profit à prendre, the ancient Norman–French term by which this interest is known in the common-law system, is a *liberty in one person to enter another's soil and take from it the fruits not yet carried away.*[25] Analogous to the right to hunt and fish on the land of another, it is an incorporeal hereditament which may be conveyed in fee or for a term of years.[26] The Document's first clause grants more than simply a right to go upon the land and reduce the earthy substances to possession. *By its own terms, it conveys the substances themselves.*[27]

██ Although the parties stipulated for a post-severance payment scheme and labeled it a "royalty,"[28] we may not assume from this provision that the Bonners have parted *with less than their entire interest in the rocks* or that they intended to withhold title to the substances until after their extraction. Without any essential indicia that a mining lease or a profit à prendre was intended to be created, the "royalty" payments must be viewed as no more than a stipulated post-severance compensation for the *in situ* interest conveyed.[29]

According to the Bonners, the second clause—which spells out the grantee's right to go upon the property to remove the substances—would be redundant if they had intended to grant the rock in place.[30] *They urge that the clause is hence repugnant to a grant of minerals*

---

**21.** "Term" designates the length of time for which a lease is granted. 1 Friedman on Leases § 4.1 (2d ed. 1983), citing *St. Joseph & St. Louis R. Co. v. St. Louis, I.M. & S. Ry. Co.,* 36 S.W. 602, 605 (Mo.1896).

**22.** *See* Tiffany, THE LAW OF REAL PROPERTY § 74, 109 (3d ed. 1939), quoting Blackstone. A lease is "a conveyance of any lands or tenements (usually in consideration of rent or other annual recompense) made for life, for years, or at will, but always for a *less time than the lessor hath in the premises.*" 2 BLACKST.COMM. 317. [Emphasis supplied.] *See also Castle v. Double Time, Inc.,* Okl., 737 P.2d 900, 903 (1987).

**23.** Although the Document gives the grantee a "perpetual" right to go upon the property to mine the substances, these words do not create a "perpetual lease." "Perpetual leases," which are *not favored* in the law, contain a primary term, subject to *renewals in perpetuity. See,* e.g., *Gleason v. Tompkins,* 84 Misc.2d 174, 375 N.Y.S.2d 247, 252 (1975), where the court refused to construe a lease to be perpetually renewable.

**24.** Characteristics of the modern mining lease include: (1) Parties with legal capacity to enter into the relationship; (2) written terms; (3) a legally effective granting clause; (4) *an habendum clause defining the duration;* (5) clauses concerning *development and marketing;* (6) clauses calling for the payment of compensation; (7) *provisions for surrender by the lessee;* and (8) *provisions for termination of the estate by the lessor. See* 3 Am.Law of Mining §§ 16.1–16.28 (1980).

**25.** *Hinds v. Phillips Petroleum Co.,* Okl., 591 P.2d 697, 698 (1979); *Mohoma, supra* note 7 at 960; *Rich v. Doneghey,* 71 Okl. 204, 177 P. 86, 89–90 (1918); *Kolachny v. Galbreath,* 26 Okl. 772, 110 P. 902, 906 (1910). *See* J.H. Baker, MANUAL OF LAW FRENCH 176 (2d ed.), Scolar Press 1990.

**26.** *See* the authorities *supra* note 25.

**27.** *See* clause one of the Document, *supra* note 10.

**28.** In the context of oil and gas law, a royalty is a share of profits from the sale of oil and gas produced from property which is under an oil and gas lease. *Teel v. Public Service Co. of Oklahoma,* Okl., 767 P.2d 391, 398 (1989); *Hays v. Phoenix Mutual Life Insurance Company,* Okl., 391 P.2d 214, 216 (1964); *Doss Oil Royalty Co. v. Lahman,* Okl., 302 P.2d 157, 161 (1956); *Elliott v. Berry,* 206 Okl. 594, 245 P.2d 726, 729 (1952).

**29.** *See* Walker, EXPRESS CLAUSES IN OIL & GAS LEASES AFFECTING THE USUAL IMPLIED OBLIGATION OF THE LESSEE, XIII Miss.L.J. 292, 293 (1941), for the view that *a provision for a royalty payment alone is not sufficient to establish a "lease" relationship.*

**30.** In the absence of language indicating a contrary intent on the part of the grantor, everything which is essential or reasonably necessary to full beneficial use and enjoyments of the interests conveyed, and which the grantor has the power to convey, passes to the grantee. *Melton v. Sneed,* 188 Okl. 388, 109 P.2d 509, 512 (1941).

*in the soil.*[31] We disagree and ascribe its inclusion to no more than a legal draftsman's overabundance of caution.[32] Although the clause reveals the parties contemplated the carrying-on of quarrying operations upon the property,[33] their *statement of purpose* is not sufficient to transform the Document into a lease relationship in the face of clear, unambiguous terms granting an *in situ* interest.[34]

■ The right to remove the rock is denominated as *exclusive.* At common law, a mere right to remove minerals or other fruits of one's land is deemed nonexclusive and hence indivisible.[35] The grant of an *exclusive* right indicates an intent to pass an interest in land which is divisible, assignable and inheritable.[36] Express language of the Document bears this out; it explicitly provides that "the rights and obligations created ... are assignable" and

contains words of inheritance—i.e., "grantee, *its successors and assigns.*" [37]

*None of the clauses which follow limits or qualifies a grant of substances in place (or in the soil).* One clause provides that Southwest Stone is to pay the real property taxes attributable to its interest. This provision is clearly consistent with a grant to Southwest Stone of a fee interest in the substances. Tax liability for all cognizable interest in land is borne by the fee owner, while leasehold interests are non-assessable.[38]

■ Absent illegality, parties are *free to bargain* as they see fit; *a court may neither make a new contract to benefit a party nor rewrite the existing one.*[39] Upon consideration of the entire Document without undue emphasis on any particular

**31.** The Bonners rely upon *Crain v. Pure Oil Co.,* 25 F.2d 824 (8th Cir.1928), where a federal district court *forecast* that an instrument reciting the sale of all oil and gas under described land *would be considered* a lease under Oklahoma law. That court relied in part upon the parties' inclusion of clauses which would have been superfluous in a deed. We decline to hold the *Crain* prediction applicable here. The scrivener's recitation in the Document of rights that normally arise as a matter of law are not inconsistent with a conveyance of substances *in situ.*

**32.** Early cases distinguished between the grant and the reservation of a mineral interest, where the instrument did not expressly include ingress and egress for development. If the *expression were omitted* from a *grant* of the mineral interest, the conveyance was void, whereas the rights would be *implied* in a *reservation. See Newbern v. Gould,* 162 Okl. 82, 19 P.2d 157 (1933); *Morgan v. McGee,* 117 Okl. 212, 245 P. 888 (1926). The distinction is no longer valid, and the right of ingress and egress for development is now implied in both grants and reservations. *See Melton, supra* note 30 at 509; *Burns v. Bastien,* 174 Okl. 40, 50 P.2d 377, 382 (1935). *See also Smith v. Kerr,* 100 Okl. 162, 228 P. 951, 953 (1924), which teaches that although a grant of oil and gas includes the right to explore for those substances along with a reasonable use of the surface for that purpose, *an exception clause in a deed which makes definite and certain the rights which the law would accord the grantee under the grant of hydrocarbons is not repugnant to the language of the conveyance itself.*

**33.** Along with the named substances, the Document clearly conveys the right to alter the surface. Sand and gravel have been defined as

minerals by the Mining Lands Reclamation Act [the Act], 45 O.S.1991 §§ 721, *et seq.,* and their mining is governed by the Act. *See* ANNOTATION, CLAY, SAND, OR GRAVEL AS "MINERALS" WITHIN DEED, LEASE, OR LICENSE, 95 A.L.R.2d 843 §§ 7, 13; *see also* ANNOTATION, CONVEYANCE OR RESERVATION OF MINERALS AS INCLUDING MINERALS RECOVERABLE ONLY BY OPEN PIT MINING, 1 A.L.R.2d 787 § 3. Perhaps the draftsman's *detailing of the relationship between the parties* is understandable in light of the litigation that is often associated with open-pit mining.

**34.** *Cleary Petroleum Corp. v. Harrison,* Okl., 621 P.2d 528, 532 (1980).

**35.** *Hinds, supra* note 25 at 699.

**36.** This rule of law stands unaltered by our statutes and case law. It is hence in force. 12 O.S.1991 § 2; *Hinds, supra* note 25 at 699. The pertinent terms of § 2 are:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma...."

**37.** *See* clause one of the Document, *supra* note 10.

**38.** *Oklahoma Industrial Authority v. Barnes,* Okl., 769 P.2d 115, 118 (1989).

**39.** *Mercury, supra* note 14 at 530; *Welch v. Montgomery,* 201 Okl. 289, 205 P.2d 288, 291 (1949).

part,[40] we are left with the firm conviction that it clearly effects a conveyance of rock in place, with stipulated post-severance payments to be made on a tonnage basis.

## III.

### NO IMPLIED–IN–LAW COVENANT DILIGENTLY TO MINE ROCK EXISTS BY REASON OF THE DOCUMENT

The Bonners urge that even if the court should decide that the Document conveys the rock *in situ*, Oklahoma Rock has a duty diligently to mine the substances, since the *only* consideration for the Document was the expected *"royalty"* from the product's sale.[41] According to Oklahoma Rock, although covenants to develop minerals may be implied in some leases, the court may *not* imply one in this case. We are urged this is so because here there has

been an outright conveyance of the "solid minerals"[42] (rock) in place.[43]

Contractual duties may arise from implied covenants. Implied-in-fact and implied-in-law (or constructive) covenants are the two varieties of implied covenants. *A covenant implied in fact* is raised by inference from words used in the agreement to effect the intention of the parties.[44] *A constructive*[45] *covenant,* sought here by the Bonners, arises only when the relation of the parties to each other, the nature of the contract, and the public's interest in the parties' activity vis-à-vis one another dictates duties *beyond* those expressly imposed by contract.[46] Because, as a matter of public policy, constructive covenants impose duties on contracting parties without their assent, they are disfavored in law;[47] courts are reluc-

---

**40.** An instrument must be considered as a whole so as to give effect to all its provisions without narrowly concentrating upon some phrase or language taken out of context. 15 O.S.1991 § 157; *Mercury, supra* note 14 at 529. The terms of § 157 are:
 "The whole of a [writing] is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others."

**41.** This contention echoes an argument made by Professor Merrill over fifty years ago. M. Merrill, Implied Covenants Between other than Lessors and Lessees, 27 Wash.U.L.Q. 155 (1942).

**42.** Courts and commentators alike have thoroughly explored the question whether sand and gravel are minerals. According to Professor John S. Lowe, this dilemma is the "tar baby" of natural resource law since the more the courts attack the problem, the more stuck they become. *See* Lowe, What Substances are Minerals?, 30 Rocky Mtn.Min.L.Inst. 2–1 (1984). This court has adopted the view that *whether such substances are "minerals" or "part of the surface" must be resolved on a case-by-case basis. Blythe v. Hines,* Okl., 577 P.2d 1268, 1269 n. 2 (1978). *The question posed here does not require us to decide whether the substances conveyed by the Document are minerals or part of the surface.*

**43.** *See* Annotation, Grant, reservation, or exception as creating separate and independent legal estate in solid minerals or as passing only incorporeal privilege or license, 66 A.L.R.2d 978 (1959).

**44.** Because it is inferred from the parties' language, an implied-in-fact covenant is deemed to be more closely akin to an express covenant

than is an implied-in-law covenant. *See* 3 Corbin on Contracts § 562, p. 286 (1960); Restatement (Second) of Contracts § 4, comment a (1981); Tiffany, The Law of Real Property § 89, p. 136 (3d ed. 1939); 1 Friedman on Leases § 6.9, pp. 197–199 (2d ed. 1983).

**45.** As used here, the terms constructive, quasi-contractual, and implied-in-law covenants are synonyms. In *Anderson v. Copeland,* Okl., 378 P.2d 1006, 1007 (1963), the court, quoting from *Piggee v. Mercy Hospital,* 199 Okl. 411, 186 P.2d 817, 818 (1947), stated: " 'Contracts implied by law, or more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the parties bound, on the ground that they are dictated by reason and justice, and may be enforced by an action ex contractu.' "

**46.** *Mercury, supra* note 14, at 529–530 n. 14; *see, e.g., Shebester, supra* note 3 at 611 (stressing public interest in the insurance business as justification for finding an implied covenant creating in an insurer the duty to pay benefits to the party entitled to them by the terms of the policy). At least one covenant is always implicit in every contract—the agreement that neither party will intentionally do anything to injure the other party's right to the fruits of the contract. *Wright v. Fidelity & Deposit Co. of Maryland,* 176 Okl. 274, 54 P.2d 1084, 1087 (1936).

**47.** *Mercury, supra* note 14 at 530; *Keystone Square v. Marsh Supermarkets, Inc.,* 459 N.E.2d 420, 423 (Ind.App.1984); *Walgreen Arizona Drug v. Plaza Center Corp.,* 132 Ariz. 512, 647 P.2d 643, 646 (Ariz.App.1982); *Bobenal Investment v. Giant Super Markets,* 79 Mich.App. 31, 260

tant to imply them where the obligations sought to be imposed are not expressed in the written text.[48]

This court has implied in *oil and gas leases* covenants diligently to develop the leasehold.[49] Recognizing that an oil and gas lease contains essentially different obligations from those imposed by a grant of a terminable mineral interest, we have refused to imply a covenant for diligent development in the latter instance.[50] The same differences militate against the implication of a covenant diligently to develop the *solid substances* enumerated in today's conveyance.

■■■■■ An oil and gas lease does not operate as a conveyance of any oil and gas in place, but constitutes merely a right to search for and reduce to possession any hydrocarbons which may be found under the leased property. A lease to explore for hydrocarbons, such as oil and gas, creates an interest in realty; it is not deemed *per se* real estate and is distinctive from an estate in real property.[51]

■■■■■ Unlike oil and gas, which are fugacious in nature and subject to the law of capture, much like animals *ferae naturae*,[52] rock is capable of ownership in the soil. There is no danger that rock will escape or that an adjoining landowner's mining of substances on his own property will diminish by draining a neighbor's own underlying supply. *Exploration* to discover the substances is not required as it is in the case of hydrocarbons. When it is economically unprofitable to proceed with mining, diligent development need not be favored. In short, a promise of a specified post-severance payment for the rock to be extracted, standing alone, is not a cogent basis for creating an implied-in-law covenant diligently to mine substances in the face of the parties' failure to impose such requirement by the Document.

### IV.

**THIS COURT IS UNABLE TO CONCLUDE FROM THE RECORD BEFORE IT THAT THE BONNERS *ARE NOT ENTITLED* TO ASSERT THEIR CLAIM FOR RESCISSION BASED UPON FAILURE OF CONSIDERATION**

The certifying court has questioned whether, should the instrument be construed as a conveyance of the rock *in situ*, Oklahoma law would consider the underlying contract subject to rescission on failure of consideration.[53] Since the Document—a conveyance of real estate—rests upon an underlying contractual agreement, principles from both the law of property and those of contracts supply the framework for our analysis.

■■■■■ The property law principle that consideration is not necessary for a valid deed is based upon the notion that a con-

N.W.2d 915, 919 (1978); *Smith v. Phlegar*, 73 Ariz. 11, 236 P.2d 749, 754 (1951); *Sheets v. Selden*, 74 U.S. (7 Wall.) 416, 423, 19 L.Ed. 166 (1869).

**48.** *Mercury, supra* note 14 at 530.

**49.** *See, e.g., Pelham Petroleum Co. v. North*, 78 Okl. 39, 188 P. 1069, 1071–1072 (1920). This court has implied a covenant to diligently mine substances in a long-term sand and gravel *lease*. *Cotner v. Mundy*, 92 Okl. 268, 219 P. 321, 323 (1923). Diligence in development is to be expected in mining *leases;* the relationship between the parties is different in conveyances of substances *in situ*. *See* the authorities *infra* note 50.

**50.** *See Fransen v. Eckhardt*, Okl., 711 P.2d 926, 930 (1985); *Jath Oil Co. v. Durbin Branch*, Okl., 490 P.2d 1086, 1091 (1971); *Beatty v. Baxter*, 208

Okl. 686, 258 P.2d 626, 628 (1953). *See also* Kuntz, THE LAW OF OIL AND GAS § 15.8, 356–357 (1962).

**51.** *Amarex, Inc. v. El Paso Natural Gas Co.*, Okl., 772 P.2d 905, 909 (1987); *Cate v. Archon Oil Co., Inc.*, Okl., 695 P.2d 1352, 1355 (1985); *Hinds, supra* note 25 at 699.

**52.** Under the "law of capture" the landowner does not own migratory substances underlying his land (such as hydrocarbons), but has the exclusive right to drill for, produce, or otherwise gain possession of such substances. *Frost v. Ponca City*, Okl., 541 P.2d 1321, 1323 (1975). When lifted and reduced to possession, oil and gas becomes personal property. *Replogle v. Indian Territory Illuminating Oil Co.*, 193 Okl. 361, 143 P.2d 1002, 1007 (1943).

**53.** *See* the court's questions *supra* note 12.

**1186**

veyance of land as a gift is just as effective as one based upon consideration.[54] Conveyances may, on the other hand, be based upon an *underlying contract*[55] *which must be supported by consideration.*[56] *The Bonners' attempted claim for rescission based upon failure of consideration might hence be litigable in this action.*[57]

▮ Oklahoma's law of contracts allows the remedy of *"failure of consideration"* if, through the fault of the party against whom rescission is sought, the consideration for his obligation fails in whole or in part. 15 O.S.1991 § 233.[58] "Failure of consideration," which in law is distinguished from "want of consideration,"[59] means that a bargained-for consideration, originally in existence and good, has since become worthless or has ceased to exist or been extinguished, partially or entirely.[60]

*The term also encompasses the neglect, refusal, or failure of one of the parties to perform or furnish the consideration agreed upon.*[61] Rescission is limited to certain circumscribed equitable conditions.[62] Where *partial* failure of consideration is raised, the court must determine whether the called-for performance which has failed to occur is so important that the contract would not have been made without it. In short, *the test is whether the failure of performance defeats the object of the contract.*[63]

▮ Parol evidence is admissible to show failure of consideration; the mere recital in a written agreement that a stated consideration has passed to another may be contradicted by parol.[64] A recital of fact in an integrated agreement may be shown to be untrue.[65] The Document identifies the

**54.** *See* R. Powell, THE LAW OF REAL PROPERTY, ¶ 898[1][b] (1993).

**55.** The Bonners' conveyance to Southwest Stone is based upon *an underlying contract which—so far as the record shows—was never reduced to writing nor recorded.*

**56.** *See* POWELL, *supra* note 54 at 81A–51.

**57.** The pronouncement in *Easterling v. Ferris,* Okl., 651 P.2d 677, 682 (1982), that a recorded deed may not be set aside for inadequacy or failure of consideration, is confined to suits for cancellation of recorded instruments and does not extend to claims for equitable rescission of an underlying contract.

**58.** The pertinent terms of 15 O.S.1991 § 233 are: "A party to a contract may rescind the same in the following cases only:

\* \* \* \* \* \*

"2. If through the fault of the party as to whom he rescinds, *the consideration for his obligation fails in whole or in part.*" [Emphasis supplied.]

**59.** The phrase "want or absence of consideration" has been defined as a total lack of any valid consideration for a contract. *Mercury, supra* note 14 at 533.

**60.** *Mercury, supra* note 14 at 532–533; *Douglass v. Douglass,* 199 Okl. 519, 188 P.2d 221, 223 (1947). *See also Necho Coal Company v. Denise Coal Company,* 387 Pa. 567, 128 A.2d 771, 772 (1957).

**61.** *Mercury, supra* note 14 at 533. *See* RESTATEMENT (SECOND) OF CONTRACTS, *supra* note 44 at § 241, which lists the following significant circumstances as helpful in determining whether a failure to render or to offer performance is material:

"(a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
"(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
"(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
"(d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
"(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."

**62.** *See, e.g., Wright v. Fenstermacher,* Okl., 270 P.2d 625, 627 (1954); *Davis v. Hastings,* Okl., 261 P.2d 193, 195 (1953); *Hurst v. Champion,* 116 Okl. 228, 244 P. 419, 421–422 (1926).

**63.** *G.A. Nichols, Inc. v. Hainey,* 190 Okl. 242, 122 P.2d 809, 811 (1942).

**64.** *Mercury, supra* note 14 at 533 n. 35; *Henry v. Hope,* Okl., 317 P.2d 239, 241 (1957); *Berry–Beall Dry Goods Co. v. Francis,* 104 Okl. 81, 230 P. 496, 497 (1924).

**65.** *See* RESTATEMENT (SECOND) OF CONTRACTS, § 218(1) (1981) which provides:

"(1) A recital of fact in an integrated agreement may be shown to be untrue." Comment "a" to § 218 explains that:

post-severance payment for substances on a tonnage basis as "partial consideration" for their conveyance; the Bonners urge *that it was the only consideration.* Oklahoma Rock argues that *both* Southwest Stone's Deed to the Bonners and the Document were part of the same transaction. According to Oklahoma Rock, if the Bonners had not agreed to convey the rock to Southwest Stone, the latter would not have parted with the three tracts of land.[66]

The Bonners' claim to rescission based upon failure of consideration rests upon an *unresolved factual dispute* as well as upon the stipulated post-execution facts with respect to (a) lack of rock mining activity by Southwest Stone and its assignees and (b) want of *any* post-severance remittances. An examination of *the trial transcript, which is not a part of the record before us,* or a full-scale evidentiary hearing might be required to resolve this factual dispute. We hence defer to the federal district court for a decision on whether the Bonners may in this action press for (a) rescission of their underlying contract with Southwest Stone upon failure of consideration, either partial or total, and, if allowed so to do, whether they may (b) *secure cancellation of the Document against the acquired in situ interest of Oklahoma Rock who claims the status of a bona fide purchaser.*

### SUMMARY

The Document, written in plain, clear and unambiguous language, conveys *in praesenti* a real estate interest *in situ.* A constructive covenant to develop the solid earthy substances *may not be implied.* Whether the Bonners may in this action press a claim on the theory of failure of consideration, either partial or total, which, if successfully waged, would free them

from their obligation to treat the underlying contract as valid and subsisting, must be decided by the certifying court.

Unless Oklahoma Rock Corporation's [Oklahoma Rock's] *in situ* interest is found to be adversely affected by the Bonners' (plaintiffs') *attempted* federal-court claim for rescission—upon failure of consideration—of their contract (with Southwest Stone) which underlies the critical Document, Oklahoma Rock is vested with *title* to all the gravel, stone, rock, shale, limestone and other forms of rock used to produce aggregate [the substances or rock] *underlying and situated* upon the subject tract (with the exception of substances the Bonners personally may use in the property's improvement), subject to specified post-severance payments on a tonnage basis.

### CERTIFIED QUESTION ANSWERED.

LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON, SUMMERS and WATT, JJ., concur.

KAUGER, J., concurs in result.

---

"The parol evidence rule (§ 213) relates to the effect of an integrated agreement on prior agreements. An integrated agreement may have the effect of discharging a prior promise, conveyance or discharge; *it does not establish fictitious events.*" [Emphasis supplied.]

66. In considering the Bonners' claim for rescission on failure of consideration—as opposed to construing the *meaning* of the Document—the

contract construction rule that two contracts between the same parties (a) relating to the same matters and (b) made as parts of substantially one transaction are to be taken together (15 O.S.1991 § 158) is *not* applicable. *In dispute between the parties is whether the Joint Tenancy Warranty Deed and the Document were executed as parts of substantially one transaction.*