The appellant, whom we will hereafter refer to as the complainant, was engaged in business in the City of Miami, under the name of G. L. Miller Bond Mortgage Company, its name being subsequently changed to Marion Mortgage Company. The defendant G. Norton Howard was the *Page 1419 
owner of certain real estate upon which she desired to erect an apartment house. One George W. Langford was engaged in building operations, and the owner of the land entered into a contract with him to erect a building upon her land. It being necessary for the owner to borrow money in order to complete the building, she and Langford took the matter up with the complainant who agreed to make the loan. A "temporary" mortgage was prepared by the complainant covering the land, and also purporting to create a lien upon furniture and furnishings which might be put in the building after its completion. When the defendant G. Norton Howard, accompanied by Langford, went to the offices of the complainant to execute this mortgage, Langford stated that the furniture and furnishings could not be covered by the mortgage because they were to be purchased on a retain title contract. The complainant then agreed to take a mortgage that did not include the furniture and furnishings, and prepared another paper which, as agreed by the parties, was to be only a "temporary" mortgage to be later superseded by a permanent mortgage. It was also agreed by all parties that the mortgage to complainant was to be a first mortgage upon the land. This "temporary" mortgage was executed by the owner of the land, upon Langford's advice, on October 16, 1924, and recorded October 18, 1924, and no mention was made of furniture or furnishings in this paper. After the execution of the "temporary" mortgage, Langford as Trustee took a mortgage on the land and on the furniture and furnishings, the same being dated as of September 1, 1924, but not recorded until November 19, 1924. Still later it was discovered by the complainant that there was an error in the description of the land as set out in the "temporary" mortgage, and thereupon complainant drew another mortgage correcting the error in *Page 1420 
description, but making no reference to the furniture and fixtures. This mortgage was signed by the owner of the land upon the advice of Langford, and was recorded about December 11, 1924. This last mortgage is referred to in the record as the "corrective" mortgage. After the completion of the building, the complainant, wishing to have what is termed a "permanent" mortgage on the property, prepared one to its liking, but included therein not only the land, but also the furniture and furnishings. Langford without seeing the paper and taking it for granted that it created a lien only on the real estate advised Mr. Howard to execute it, which she did. This last, or "permanent" mortgage was dated as of September 1, 1924, acknowledged on January 17, 1925, and recorded on the 24th day of January, 1925. The complainant, thereupon drew what is termed a "subordinating" agreement to be executed by it as "first mortgagee;" by Mrs. Howard, the "owner" and by Langford, as Trustee, as "second mortgagee." This "subordinating" agreement was dated January 20, 1925, acknowledged the next day and recorded on the same day as was the permanent mortgage — January 24, 1925. Among others, it contains the following recitals:
 "WHEREAS, said second mortgagee is the owner and holder of that certain mortgage or trust deed dated September 1, 1924, executed and given by said owner to said second mortgagee encumbering the land hereinafter described which mortgage was filed for record November 19, 1924;"
and
 "WHEREAS in order to procure funds with which to complete said construction on said land the said owner has made, executed and acknowledged a mortgage *Page 1421 
or trust deed given by it to said first mortgagee dated September 1, 1924, encumbering the land hereinafter described, and,
 "WHEREAS said first mortgagee is not willing and will not make the loan desired by said owner of it, to secure which the aforesaid mortgage or trust deed given by said owner to said first mortgagee was given unless said mortgage or trust deed given by said owner to said * * * first mortgagee is a first mortgage, prior in dignity in every respect to the aforesaid mortgage given by said owner to said second mortgagee, and
 "WHEREAS, said second mortgagee, in order to be enabled to construct the aforesaid building and receive the contracted compensation therefor, without delay desires to encourage and promote the said loan by said first mortgagee, to said owner to secure which the aforesaid mortgage or trust deed given by said owner to said first mortgagee was given, though the loan has not actually been made.
 "NOW THEREFORE, the said second mortgagee, in consideration of the aforesaid its desires in the premises, and the sum of ten dollars, and other valuable considerations to it now in hand paid by the said first mortgagee, does hereby agree to and with the aforesaid owner and the aforesaid first mortgagee, to and does hereby in every respect subordinate and declare its aforesaid mortgage or trust deed dated September 1, 1924, to be inferior in dignity and a subordinate lien to the aforesaid mortgage given by the aforesaid owner to the aforesaid first mortgagee dated September 1, 1924, encumbering the following described land, in Dade County, Florida;" (description omitted) *Page 1422 
and (the owner)
 consents in every respect to the aforesaid agreement and intends by this agreement and by said mortgage or trust deed given by it to said first mortgagee on September 1, 1924, encumbering the above described land, that said mortgage given to said first mortgagee shall be a first mortgage lien prior in dignity, not only to that of the aforesaid second mortgagee, but to all other liens, except taxes."
The complainant instituted suit to foreclose the "permanent" mortgage, and the bill therein prayer among other things that the court decree the complainant's lien to be superior to the rights of the defendant. The defendant, Langford, as trustee, filed an answer in which he set up a state of facts in substance as we have stated them and further:
 "Shows to the court that in violation of the true intent, meaning and purpose of said subordinating agreement, and for the purpose of defrauding defendant with respect to his said lien on said furniture, furnishings, fixtures and equipment, the said G. L. Miller Bond Mortgage Company fraudulently drew said 'permanent' mortgage so as to make the same appear to give a lien on said furniture, furnishings, fixtures and equipment, superior to the lien thereon of defendant, notwithstanding that the said G. L. Miller Bond Mortgage Company then and there well knew that defendant had not subordinated the priority of the said lien with respect to the furniture, furnishings, fixtures and equipment, and that he had not so intended to do; that, without defendant's knowledge or consent, and without the knowledge or *Page 1423 
consent of the said G. Norton Howard, and with the purpose and intent of defrauding defendant, said G. L. Miller Bond Mortgage Company surreptitiously and fraudulently inserted in said 'permanent' mortgage a provision whereby said furniture, furnishings, fixtures and equipment were therein included, in addition to said real estate, contrary to the said agreement; that defendant relied upon said G. L. Miller Bond 
Mortgage Company, pursuant to said agreement, to so draw its said 'permanent' mortgage that the same should include and convey only real estate as the same was described in said 'corrective' mortgage. And defendant says that complainant's alleged lien upon said furniture, furnishings, fixtures and equipment is secondary, subordinate, and inferior to the lien of defendant's said mortgage with respect to said furniture, furnishings, fixtures and equipment, and should be so decreed by this Court in this proceeding. * * *
 "Further answering the bill of complaint herein, defendant says that the said 'permanent' mortgage was made and accepted by the parties thereto respectively in lieu of said 'temporary' mortgage and said 'corrective' mortgage, but defendant says, upon information and belief, that the said 'temporary' mortgage and said 'corrective' mortgage, although not now valid or proper liens upon said premises, have never been satisfied or removed from the said public records of Dade County, as should have been done."
In his answer, Langford, as trustee, prays for affirmative relief. The cause was referred to a general master who found, among other things, that the mortgage of Langford as trustee, as to the furniture, furnishings, fixtures and equipment, is inferior in dignity to the "permanent" mortgage of the complainant. Exceptions were taken by *Page 1424 
Langford as trustee to the finding which he have specifically referred to, which, upon being heard were sustained by the court. The court then entered its final decree of foreclosure wherein its was declared that the mortgage of Langford is superior in dignity to the mortgage of complainant.
The case is now here for a review of the order sustaining the exceptions to the master's report and also for a review of "that portion of the final decree decreeing that the mortgage of the defendant, George W. Langford, as trustee, on the personal property, same being the furniture and furnishings, described in the mortgage foreclosed in this cause, is superior in dignity to the lien of complainant's mortgage on said personal property."
The intention of the parties to a contract must be arrived at from a consideration of the nature and purpose of the contract as shown by the language used. Brown v. Beckwith, 60 Fla. 310, 53 So. R. 542; Bloodworth v. A. H. F. H. Lippincott, 78 Fla. 261, 82 So. R. 827; Canal Lumber Co. v. Florida Naval Stores 
Mfg. Co., 83 Fla. 501, 92 So. R. 279.
The defendant Langford was not a party to the "permanent" mortgage, and unless the "subordinating agreement" binds him to it, no covenant or condition of the said mortgage is binding upon him. If it was the purpose of the complainant to have Langford subordinate his lien on the personalty to the lien created by the "permanent" mortgage and if that purpose is to be ascertained from and because of the language of the agreement which reads as follows:
 "The said second mortgagee * * * does hereby agree to * * * subordinate and declare its aforesaid mortgage or trust deed dated September 1, 1924, to be inferior in dignity and a subordinate lien to the aforesaid mortgage *Page 1425 
given by the aforesaid owner to the aforesaid first mortgagee dated September 1, 1924, encumbering the following described land in Dade County, Florida (description omitted);"
it must be credited with using no small degree of craft in drawing the "subordinating agreement." With nothing to put him upon inquiry or to lead him to believe that he was about to be imposed upon, the "subordinating agreement" on its face was sufficient to justify him as an ordinarily prudent business man in believing that in signing the agreement, he was subordinating his lien only upon the land to the lien of complainant. By particularly referring to and describing the land the said agreement, as we construe it, excludes the idea that it was the intention of the parties thereto that the complainant should have a first mortgage upon the furniture, furnishings and fixtures.
The appellant insists that the contract is clear and free from ambiguity; that the defendant Langford in and by the terms of the same agreed to subordinate the lien created by his mortgage to the lien of the complainant, and that the contract cannot be contradicted or varied in any respect by parol evidence. The "parol evidence rule" is recognized by this Court, but we cannot agree to the application of the rule as contended for by the appellant in this case. We cannot determine the rights of the parties by looking at only a part of the contract. We must construe it as a whole. Stewart v. Preston, 1 Fla. 10, 44 Am. Dec. 621; Fry v. Hawley, 4 Fla. 258; First Nat. Bank v. Savannah F. W. Ry. Co., 36 Fla. 183, 18 So. R. 345; Canal Lumber Co. v. Florida Naval Stores Mfg. Co., supra; Ross v. Savage, 66 Fla. 106, 63 So. R. 148; Brown v. Beckwith, supra; Hull v. Burr, 58 Fla. 475, 50 So. R. *Page 1426 
754; Blackshear Mfg. Co. v. Fralick, 88 Fla. 589, 102 So. R. 753.
Considering the entire contract, it is our conclusion that Langford thereby subordinated his lien on the land and not on the personalty to the lien of complainant. If, however, we were unable to say that the written agreement as a whole does not clearly show that the parties intended that the lien of Langford upon the land only should be subordinated to the mortgage lien of complainant, we would have to say that the language of the contract makes it uncertain as to what was intended by the parties and in such cases, parol evidence tending to show "the facts or circumstances in the light of which the parties acted and wrote" may be admitted to aid in arriving at the correct meaning of the contract. Schmitt v. Bethea, 78 Fla. 304, 82 So. R. 817; Solary v. Webster, 35 Fla. 363, 17 So. R. 646; Jacobs v. Parodi, 50 Fla. 541, 39 So. R. 833.
A careful reading of the evidence convinces us that while it was the intention of complainant at first to take a mortgage on the furniture, furnishings and fixtures, as well as upon the land, that intention was abandoned prior to the preparation of the "temporary" mortgage and was not again seriously considered until after the execution of the "corrective" mortgage which was after the mortgage to Langford as trustee was executed and recorded. The evidence discloses that Langford was present and took part in the discussion leading to the execution of both the "temporary" and "corrective" mortgages and knew that it had been agreed that the complainant was not to have a mortgage on the furniture, furnishings or fixtures, but a first mortgage only on the real estate, to which he, Langford, agreed. Langford took a mortgage upon the land, furniture, furnishings and fixtures, to secure the payment of the balance due him for constructing the building. *Page 1427 
Later, and after the building was completed, the "permanent" mortgage covering not only the land, but furniture, furnishings and fixtures — though the inclusion of the personalty had not been agreed to by either Mrs. Howard or Langford — was prepared by the complainant and the same was executed by the owner Mrs. Howard upon the advice of Langford, who had not seen the document, but assumed that it was in line with the previous agreement. The complainant then prepared the "subordinating agreement" and submitted it to Langford before the permanent mortgage was filed for record. When the "subordinating agreement" was exhibited to Langford for his signature, no explanations were offered by complainant, nor were any questions asked by Langford. He merely read the agreement and signed it. So far as we are advised by the record, Langford, knowing that his mortgage had been recorded, executed this "subordinating agreement" in pursuance of his previous understanding that the complainant should have a first mortgage upon only the land. The "permanent" mortgage was not exhibited to him. As a matter of course, Langford, before signing the agreement, might have interrogated the officials of the complainant as to what the "permanent" mortgage covered and possibly could have discovered that it was not in accordance with the verbal agreement. Since the document referred to and described particularly the land and did not refer to any other kind of property, we think that the production of the paper to Langford was a representation on the part of the complainant that nothing but the lien upon the land was to be affected thereby, and that Langford acted merely as any other ordinarily prudent man would have acted under the circumstances. It appears now that the land is not worth the face value of the mortgage debt of complainant, and it may be that that fact has *Page 1428 
had its influence in inducing the complainant to contend that its lien is prior in dignity to that of Langford upon the furniture, furnishings and fixtures. Be that as it may, we are unable to say from what appears in the transcript that it is shown that the lower court erred in making the order sustaining the exceptions to the master's report or in making the final decree. It follows that such order and decree must be affirmed.
In rendering this opinion we are assuming without deciding that the appeal from a portion of the final decree is an appeal from the final decree.