658 So.2d 1049 (1995)
David L. GORMAN, Appellant,
v.
George T. KELLY, IV., Appellee.
No. 93-0479.
District Court of Appeal of Florida, Fourth District.
June 9, 1995.
Rehearing Denied August 22, 1995.
*1050 David L. Gorman and Peter S. Van Keuren of David L. Gorman, P.A., North Palm Beach, for appellant.
Kenneth A. Marra of Nason, Gildan, Yeager, Gerson & White, P.A., West Palm Beach, for appellee.
DELL, Chief Judge.
This appeal arises out of appellant David L. Gorman's suit for breach of contract and specific performance against appellee George T. Kelly, IV. Appellant alleged that appellee failed to purchase his one-half interest in undeveloped residential property pursuant to the parties' Letter of Agreement. Appellant contends the trial court erred when it determined that the Letter of Agreement was ambiguous and admitted parol evidence to explain its terms. Appellant also contends that the trial court erred when it concluded that the parties entered into a contract for sale and purchase of real property which vested in appellee the right to terminate the contract in writing within a reasonable time after the contractually specified termination date. The record supports the trial court's findings of fact and conclusions of law, and accordingly we affirm.
In 1985, appellant and a partner purchased twenty-two undeveloped lots zoned for a development to be known as Sandtree. The property was titled in the partner's name as trustee. In August of 1990, appellant and *1051 appellee entered into negotiations for the purchase and sale of appellant's interest in the undeveloped property. The negotiations resulted in appellant drafting two proposed contracts for the sale of his interest to appellee. Under the first draft, both parties retained the right to cancel the agreement until the date of closing. Apparently, the reciprocal rights to cancel were not acceptable to appellee, and the parties ultimately agreed to the following:
1. Purchase Price. ...
2. Closing Date. The closing will occur on or before November 1, 1990, subject to the contingencies outlined below.
3. Contingencies. As you know, the [Planned Unit Development] for Sandtree has expired, and Bobby and I have applied for an extension. In order to require you to close on November 1, 1990, we must receive an extension of the PUD for at least a two year period. In addition, however, you will have the right to examine the property to insure its suitability for your purposes. If you determine that it is not suitable, then you may elect to walk away from the transaction by the delivery of written notice which must be received by me at my office on or before October 15, 1990... . [W]hether you elect to close of not, you have agreed to be responsible for my share of any interest in connection with The Bank of South Palm Beach's loan or any replacement loan on the property for the period beginning on August 6, 1990, and continuing through the date of closing. That interest expense will be due from you to me as I am required to pay it.
The Agreement did not contain an express time of the essence provision.
After execution of the agreement, the parties did not directly communicate until November 1, 1990, the scheduled date of closing. Although it appears undisputed that the PUD extension was granted, it does not appear appellant informed appellee he had acquired the extension. Appellee claimed that he had been in contact with appellant's partner on several occasions after execution of the contract and that he informed appellant's partner before October 15, 1990 that he was having problems acquiring a construction loan for the proposed development. Appellee believed that appellant's partner would have conveyed his desire to cancel the deal before the October 15, 1990 deadline. The record contains conflicting evidence regarding appellee's assumption. The record does show that appellee did not provide a written notification on or before October 15, 1990 regarding his intent to cancel the transaction.
On November 1, 1990, appellant telephoned appellee to arrange the closing of the transaction. Appellee explained that he had not obtained financing on the property and that he had no intention of closing. Appellant faxed a letter to appellee indicating his agreement "to put the closing off for a short while," but stated that his willingness to extend the closing "should not be construed as an acknowledgment by me that a financing contingency exists." On November 9, 1990, appellee sent appellant written notice that he would be "unable to complete our contemplated purchase of your interest." Thereafter, on April 5, 1991, appellant faxed a letter to appellee informing him that if he did not agree to proceed to closing, appellant would "be forced to look to [appellee] for whatever relief may be available under our agreement." The closing did not take place, and appellant filed suit for specific performance and damages for breach of contract.
Throughout the pretrial proceedings and trial, appellant maintained that the Letter of Agreement should be construed as a contract for the purchase and sale of an interest in real property. Appellee maintained below that he had an "irrevocable option to purchase" the property interest. The trial court determined that the Letter of Agreement was ambiguous and admitted parol evidence, including a copy of the proposed Letter of Agreement and other extrinsic evidence of pre-contract negotiations, to explain the ambiguities in the contract. In its final judgment, the trial court stated:
The Court finds that this was a contract for the sale and purchase of an interest in real property. That here [sic] was no written agreement that time was of the essence and in attempting to ascertain the intentions of the parties the evidence is ambiguous as to whether time to reject *1052 was of the essence. For example, it is unclear whether the notification to reject deadline was to be October 15 or November 1. It was agreed that the Seller could not cancel up to October 15, but it is not clear if he could cancel after October 15 if the [Buyer] had not yet locked in the purchase. The Seller contends that October 15 was the deadline for any cancellation or rejection but the Buyer disagrees and the contract is ambiguous.
The Court finds that time was not of the essence until Plaintiff offered to close and that the Defendant's rejection was then timely and was within a reasonable time under the contract's terms.
After entry of the final judgment, appellant, in his motion for rehearing, conversely argued that time was of the essence under the "option" portion of the contract whereby appellee had the right to cancel the agreement by delivery of written notice to appellant on or before October 15, 1990. Appellant further argued that even if time was not of the essence before he demanded closing on November 1, 1990, time became of the essence after the demand. The trial court articulated its reasons for rejecting appellant's arguments in its order denying rehearing:
The term "option" does not automatically determine that this contract actually was an option. 44 Fla.Jur.2d Real Property Sales and Exchanges, § 7, n. 35; Boyer, Florida Real Estate, 6B.01. This contract was ambiguous. It was originally written as a sales contract and then included language referring to an option. The court's analysis of this contract and the underlying facts in this case led the Court to conclude that this was not an option contract but rather a sales contract.
Appellant seeks reversal of the trial court's order denying his motion for summary judgment and the final judgment in favor of appellee. He objects to the trial court's finding of an ambiguity and the admission of extrinsic evidence to clarify the meaning of language utilized in the "Contingencies" paragraph of the agreement. Appellant claims that the clear and unambiguous terms of the contract should be read to provide appellee with an "option to terminate," thus creating an option contract under which time would be of the essence, regardless of whether the contract contained such a provision.
Initially, the parties' disparate interpretations of the October 15 deadline supports the trial court's determination that the language employed in the contract was ambiguous. See Vienneau v. Metropolitan Life Ins. Co., 548 So.2d 856, 859 n. 5 (Fla. 4th DCA 1989) (defining an "ambiguous" term as one "susceptible of interpretation in opposite ways" or "reasonably or fairly susceptible to different constructions"). As shown above, appellant maintained consistently through final judgment that the agreement was a contract for the sale of an interest in land, which entitled him to a judgment for specific performance and damages. Appellee maintained that the agreement constituted an irrevocable option to purchase. On rehearing, and now on appeal, both appellant and appellee adopt opposite stances. The change in the parties' respective positions demonstrates that the subject provision is ambiguous because it is susceptible to different constructions.
It is well settled that where a term of a contract is clear and unambiguous or only one logical interpretation consistent with the intent of the parties exists, the court must give the contract that meaning. Blue Cross & Blue Shield of Florida v. Cassady, 496 So.2d 875, 877 (Fla. 4th DCA 1986) and cases cited therein. Where a term in a contract is ambiguous or unclear, "the court may consider extrinsic matters not to vary the terms of the contract, but to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties." Vienneau, 548 So.2d at 859. In finding the contract ambiguous, that is susceptible of both parties' interpretations, the contract must be construed against the draftsman. Id. at 859-60. Under the circumstances presented at bar, the trial court's resort to parol evidence to explain the October 15 provision was warranted to determine whether the contract created an irrevocable option.
*1053 Here, the contract itself reveals minimal indicia of an irrevocable option: the letter agreement does not label the condition for termination as an option; it does not specifically provide that the interest paid by appellee on the mortgage constituted consideration for an option; and it does not specifically state that appellee will accept the terms of the contract and be obligated to close on the agreed-upon date should he fail to give notice of his intent to terminate the contract. Moreover, the record shows that during the negotiations for the contract, appellee insisted upon an "option to purchase irrevocable through October 15, 1990." Appellant drafted the agreement and provided that, "[I]f you determine that it is not suitable, then you may elect to walk away from the transaction by delivery of written notice which must be received by me at my office on or before October 15, 1990." In order to construe this as an option agreement, as appellant now urges, it would be necessary for us to conclude that the parties intended that appellee's failure to notify appellant of his intent not to close on the transaction, in other words his silence or inaction, constituted an exercise of the option. The parol evidence in this case simply does not support this proposition.
We hold the record supports the trial court's findings of fact and agree with its conclusion of law that the Letter of Agreement created a contract for sale and purchase of the real property with a provision for the buyer to terminate the contract upon notice to the seller as set forth in the "Contingencies" paragraph of the agreement. See generally Puritz v. Rosen, 442 So.2d 278 (Fla. 4th DCA 1983) (stating that findings of fact come to this court with a presumption of correctness and will not be disturbed if supported by competent evidence). The contract did not include an express time of the essence clause and a court of equity will not consider time of the essence in a contract for the sale and purchase of real estate unless the contract so provides. Henry v. Ecker, 415 So.2d 137 (Fla. 5th DCA 1982), rev. denied, 429 So.2d 5 (Fla. 1983); Fretwell v. Crisafulli, 185 So.2d 504 (Fla. 4th DCA 1966). Therefore, under equitable principles, appellee had a reasonable time after the specified date to provide notice of termination since time was not of the essence. Since appellee furnished the requisite written confirmation of his cancellation of the transaction within a reasonable time after the express termination date of October 15, 1990, appellant was not entitled to specific performance or damages.
Accordingly, we affirm the trial court's denial of appellant's motion for summary judgment, the final judgment and the order on rehearing.
AFFIRMED.
HERSEY, J., and DAUKSCH, JAMES C., Associate Judge, concur.