696 So.2d 498 (1997)
Lynda Russell SCHROEDER and Mark Stenstrom, etc., Appellants,
v.
Joyce F. JOHNSON, Appellee.
No. 96-2843.
District Court of Appeal of Florida, Fifth District.
July 3, 1997.
Thomas A. Speer of Thomas A. Speer, P.A., and George B. Wallace of George B. Wallace, P.A., Sanford, for Appellants.
R. Edward Cooley of Shepherd, McCabe & Cooley, Longwood, for Appellee.
COBB, Judge.
The appellee, Joyce Johnson, filed her complaint below seeking a declaratory judgment that a lease between herself and the Eleanor C. Russell Inter Vivos Trust provided for perpetual renewals. The lease was prepared by Johnson's attorney and executed by a prior trustee who, at the time, was in federal prison and dying of cancer. That trustee died several months after execution of the lease, and his testimony as to intent was not available at trial. The specific lease provision relied upon by Johnson is paragraph 6 which states:
Landlord does hereby grant to Tenant the right to extend this lease for successive five (5) year periods. Such right shall be executed by Tenant giving written notice of intent to exercise right of extension which written notice shall be delivered to Landlord by certified mail return receipt requested not less than ninety (90) days prior to the termination of the then existing rental.
The present trustees argue against any interpretation that the lease is "perpetual," and rely, inter alia, on the case of Hutson v. *499 Knabb, 212 So.2d 362 (Fla. 1st DCA 1968). In Hutson, the operative words of the lease provided for "an option of renewal every five years." The opinion, citing to Thompson on Real Property, Vol. III, section 1088, p. 313, observed that leases in perpetuity are not favored and will not be so construed unless the intention to give them that effect is expressed in unequivocal terms. The Hutson opinion quoted from 31 A.L.R.2d 607 at 610:
"As indicated by numerous cases discussed or referred to in §§ 3 to 7, inclusive, the courts are loath to construe a covenant for renewal as providing for more than one renewal after the expiration of the original lease, and the language of the lease with respect to renewal must indeed be clear and explicit to impel the court to construe the lease otherwise. Thus, in the absence of unambiguous terminology indicating the intention of the parties to provide for plural renewals, it is generally held that the covenant to renew is satisfied by one renewal, and does not require the insertion of a renewal clause in the instrument under which the lessee in holding subsequently to the expiration of the original lease. In other words, the term "renewal" imports a new lease for the same period of time and on the same terms, but without any covenant for a further extension."
Hutson, supra at 364.
The trustees also rely on language from the Florida Supreme Court case of Sisco v. Rotenberg, 104 So.2d 365, 368 (Fla.1958), which held that the argument that a plaintiff's exercise of his option to renew brought about a new contract with identical provisions of an old contract would have to fail since, "most courts have taken the view a covenant to renew is satisfied by one renewal thereof, due to their disfavor of perpetuities and perpetual leases" (cites omitted). See also Sheradsky v. Basadre, 452 So.2d 599, 603 (Fla. 3d DCA 1984), rev. denied, 461 So.2d 113 (1985).
Johnson asserts in her answer brief that the lease was ambiguous to the extent it did not specify the number of renewals contemplated by the parties, and was therefore subject to construction based on parol evidence. Based on testimony at trial, the trial court concluded that the parties intended that the tenant, Joyce F. Johnson, should have the right to renew the lease in five year intervals during her lifetime.
We agree with the appellant in respect to the term of the lease. Since there is no unambiguous and explicit language in the lease evincing the intent to grant perpetual renewals, or even renewals for Johnson's life, we hold that the lease provides for only two successive five-year renewalsi.e., a maximum potential lease term of fifteen (15) years. See Sisco; Sheradsky; Hutson, supra.
In regard to the second issue raised on appeal, we affirm the trial court's construction of the provision in the contract dealing with rental proceeds.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
GRIFFIN, C.J., concurs and concurs specially with opinion.
W. SHARP, J., concurs in part, dissents in part, with opinion.
GRIFFIN, Chief Judge, concurring specially.
I agree with the majority opinion. Although none of the Florida cases relied upon deal with a "successive renewal" clause like the one in the present case, courts in other jurisdictions not infrequently have had to do so. See Jay M. Zitter, Annotation, Sufficiency of Provision of Lease to Effect Second or Perpetual Right of Renewal, 29 A.L.R.4th 172 (1984). Section 9 of this annotation collects cases dealing with "successive renewal" provisions. Review of these cases reflects that no uniform approach to the interpretation of such clauses exists. Some courts take the approach that, because a lease in perpetuity is disfavored in the law, any ambiguity must be resolved against perpetual renewal. Other courts search for the intent of the parties by scouring every word of the entire lease or by introduction of parol evidence. In the cases cited in the majority opinion, Florida seems to have taken the former approach, requiring a clearly expressed intent that the lease be subject to perpetual renewal. *500 While this rule may in some cases frustrate the intent of the original parties to the lease,[1] it is important for Floridians to know that a clear intent be expressed in order to encumber real property in such a significant way.
W. SHARP, Judge, concurring in part and dissenting in part.
I respectfully dissent in part, and concur in part. The trial court found the lease provisions ambiguous in many regards, and heard parol testimony as to the parties' intent. Based on that testimony he concluded that the rent calculation should include various items of income to the lessee, and exclude others, based essentially on oral testimony as to what the parties intended, and how the parties had handled the rental calculations, over the years. In this regard I agree the trial court's judgment should be affirmed. See Marion Mortgage Co. v. Howard, 100 Fla. 1418, 131 So. 529 (1930); Schmitt v. Bethea, 78 Fla. 304, 82 So. 817 (1919); U.S. on Behalf of Small Business Administration v. South Atlantic Production Credit Ass'n, 606 So.2d 691 (Fla. 1st DCA 1992); Gorman v. Kelly, 658 So.2d 1049 (Fla. 4th DCA 1995); Royal Dev. and Man. Corp. v. Guardian 50/50 Fund V, Ltd., 583 So.2d 403 (Fla. 3d DCA 1991); Liza Danielle, Inc. v. Jamko, Inc., 408 So.2d 735 (Fla. 3d DCA 1982); Morton v. Morton, 307 So.2d 835 (Fla. 3d DCA), cert. denied, 324 So.2d 90 (Fla.1975); Royal American Realty Inc. v. Bank of Palm Beach & Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968). By the same token, I think the trial court correctly found that the provision for renewal in the lease was inartfully and ambiguously drafted, and therefore it also should be interpreted with the assistance of parol evidence, to carry out the parties' intent. I would affirm the trial court's interpretation that the parties intended indefinite renewals during the lifetime of the lessee, Joyce F. Johnson. On that ground I dissent from the majority's opinion.
Johnson filed a declaratory judgment suit to interpret various provisions of a somewhat in-artfully drawn lease between herself and Joe Thomas Russell (Tommy), as trustee for his incompetent mother, Eleanor. It provided that the lease of the Marine Island Fish Camp would be for a period of five years, commencing June 1, 1992 and ending June 1, 1997. Paragraph 6 stated as follows:
Rights of Extension:
Landlord does hereby grant to Tenant the right to extend this lease for successive five (5) year periods. Such right shall be executed by Tenant giving written notice of intent to exercise right of extension, which written notice shall be delivered to Landlord by certified mail return receipt requested not less than ninety (90) days prior to the termination of the then existing rental. (emphasis supplied)
Clearly this provision contemplates more than one renewal, since it uses the plural form for periods, and talks about notice to extend being delivered ninety days prior to the "then existing rental" term. If more than one extension was contemplated, why are we bound to conclude as the majority opinion does, that only two are permissible? Why not hear parol testimony in an attempt to determine what these parties really meant?
I submit that the rule of construction against perpetual renewals in leases, referenced by the majority opinion to support its only two renewal interpretation of this lease, does not mandate that result in this case. The "black letter law" goes back to ancient legal times. Courts were reluctant to, and leaned over backward not to, interpret a lease with an unlimited renewal clause as providing for eternal, perpetual renewals.[1] They did not want to burden the fee or the fee owner with such an ongoing tenancy.[2] *501 Only where the parties clearly and unambiguously provided for a perpetual renewal right using the words "forever", "in perpetuity", or "infinity", or the like, will some courts give effect to such a clause.[3] This has led to strained constructions and contortions of language on the part of courts to reach such a result.[4] But, if the lease is clear and unambiguous, a provision for perpetual renewals is not against public policy, and it will be enforced.[5]
However, there is a middle ground position for the construction of lease provisions which expressly provide for more than one renewal, but fail to say how many. More than one court has resolved this dilemma by construing the right to renew as being personal to the lessee, and thus measured by the lessee's lifetime.[6] This construction has precedent in ancient common law where, unless words of limitation were used in a perpetual lease, the lease was for the life of the lessee.[7] Other cases limit and measure the duration of a successive renewal clause in a lease in some other finite way, based on the intent and circumstances of the original parties.[8]
I submit that the trial judge in this case followed that approach. He heard considerable testimony concerning the original parties' intentions, their circumstances when they negotiated the lease, and the circumstances of the leased premises. Before the lease was negotiated, Tommy had a "handshake" lease with a person who never paid any rent, who made no repairs, and who let the camp deteriorate and fill up with junk and garbage. Few or no repairs had been made by anyone for 20 years. Tommy's mother had lived there previously, but she had become incompetent. Tommy, her only child, was the trustee for her trust, and the fish camp was part of the res of the trust.
The trust had been receiving no income from the fish camp, and Tommy was concerned about obtaining funds with which to pay his mother's nursing home, and other living expenses. At that time he was terminally ill with cancer, and serving time in a federal prison in Florida. He knew he was dying, and that he needed to make a permanent arrangement for the fish camp. Incidentally, he spent a few weeks at the fish camp, immediately prior to his death, and was very pleased with how the Johnsons were then operating it.
Tim Points, a family business advisor for Tommy and his parents, received a telephone call from Tommy from prison in June of 1992. He asked Tim's advice about renting the fish camp to the Johnsons. They were long term friends of his and he had confidence they would do a good job with the fish camp. Points gave him financial advice.
Jacqueline Russell, Tommy's widow, was present at the prison when Tommy and Joyce Johnson signed the lease, in the visitors' picnic area. She had also discussed with Tommy the terms of the lease. She *502 testified that Tommy originally wanted to lease the camp to the Johnsons for 99 years, or for the Johnsons' lifetime. However, Joyce said she wanted a way out, if things did not go well. They solved the dilemma by putting in successive five-year options to renew, in case the Johnsons ever decided to get out. Tommy's primary concern was to have the island "took care of" and he knew the Johnsons would do that. When asked how many five-year renewals were intended, Jacqueline said she had discussed this with Tommy, and he wanted it to be indefinite or until the end of Joyce's life. "That's the way we had set it up and all."
Joyce Johnson testified that when they first rented the fish camp, it was in very bad condition. "It was a dump." Seminole County was about to shut it down because of raw sewage problems. They had to replace all of the tenants. They pumped out all septic tanks, and rebuilt new concrete tops for the open and overflowing ones, and put in new drain fields. They replaced the electrical wiring to the trailers, and replaced all water lines because sulfur water had clogged them up and many were broken. Joyce testified they hauled off seven rusted-out trailers and huge amounts of abandoned junk. They also replaced all the docks and rebuilt the boathouses.
In order to finance this undertaking, Joyce took out a 15 year mortgage loan on her home. She said she knew she was going to have a big job to bring the fish camp up to profitability, and that it was going to take a long time to recoup her investment. She thought she was entitled to renew and run the fish camp, "as long as I wanted." Had this not been the case, she would not have gone into the deal.
After hearing this unrefuted testimony as to the intent of the parties in negotiating the lease, the circumstances under which it was prepared, and the undertakings and understandings of the parties, the trial judge interpreted this lease as providing for multiple five-year extensions, exercisable by Joyce Johnson, personally, as the tenant, as long as she survives. Should Joyce exercise an extension term and die before it expires, her heirs and successors would be permitted to finish out that term, but they would not have any right to extend. In my view, this is an interpretation of the lease which is rational, and is supported by the parol evidence as to the parties' intent presented at trial as well as the circumstances of the property leased and the original parties. All of the cases cited above delve into such matters, and in construing the limitations on successive renewal clauses in leases, all reach similar results.
Nor do I think the Florida cases cited by the majority opinion mandate a contrary result. Sisco v. Rotenberg, 104 So.2d 365 (Fl. 1958) presented the question of whether a lessee who had an option to renew a five-year lease "for a period of five years" (emphasis added), under the same terms and conditions as the original lease, meant that after one renewal, a successive renewal would arise. In rejecting that interpretation, the Florida Supreme Court cited the black letter law that a covenant to renew is satisfied by one renewal thereof. However, in this case, it is clear the lease contemplated multiple renewals, and the issue in this case is how many were intended.
In Sheradsky v. Basadre, 452 So.2d 599 (Fla. 3d DCA), rev. denied, 461 So.2d 113 (Fla.1985), the issue was similar to the one in Sisco. The lease provided for automatic renewal at the end of the term. Did that created a perpetual lease? The court held that the contested provision did not clearly exhibit an intent to provide for more than one renewal. As stated above, the distinction with this case is that the lease clearly does provide for more than one renewal.
In Hutson v. Knabb, 212 So.2d 362 (Fla. 1st DCA 1968), the court construed a lease which provided for a term of five years with option of renewal every five years from the 29th day of January. In interpreting that provision against a perpetual renewal, the court looked at the circumstances of the parties at the time the lease was written. They had apparently contemplated a sale of the premises, to the lessee or a third party. The court concluded that it made no sense to include both a right to purchase at a price fixed by a bona fide offer, if the lessee had a perpetual right to renew. It used the provisions *503 of the lease itself to deduce the intent of the original parties to the lease.
In this case, the lease provisions are simple, but not clear. The original parties apparently understood what they meant. They just did not say it very well. Once the court delved into the extensive parol testimony available in this case about the original parties' circumstances and their intentions, any ambiguities vanished. No perpetual lease was ever contemplated. I submit the parties' intentions should be followed in this case and the trial judge should be affirmed on his construction of the successive renewal provisions.
NOTES
[1] The lower court found that the intent of the parties in this case was that the lease be renewable at the option of the tenant for her lifetime. There is evidence in the record to support that finding.
[1] 51 C.J.S. Landlord-Tenant § 61; Thompson on Real Property, Vol. III § 1088; 29 A.L.R.4th 172 LeaseRight of Renewal; 31 A.L.R.2d 607, Lease, Second or Perpetual Renewal, Anno.
[2] See Brush v. Beecher, 110 Mich. 597, 68 N.W. 420 (Mich. 1896); Lattimore v. Fisher's Food Shoppe, Inc., 313 N.C. 467, 329 S.E.2d 346 (1985).
[3] 49 Am.Jur.2d Landlord and Tenant § 161; Geyer v. Lietzan, 230 Ind. 404, 103 N.E.2d 199, (Ind. 1952); Gleason v. Tompkins, 84 Misc.2d 174, 375 N.Y.S.2d 247 (N.Y.Sup.1975).
[4] See Pechenik v. Baltimore & Ohio Railroad Co., 157 W.Va. 895, 205 S.E.2d 813 (W.Va.1974).
[5] 49 Am.Jur.2d Landlord and Tenant § 159; Seaboard Coast Line Railroad Co. v. Adcock, 119 Ga.App. 812, 168 S.E.2d 606 (Ga.App.1969).
[6] See Farone v. Mintzer, 133 A.D.2d 1009, 521 N.Y.S.2d 158 (1987) (lease renewable for successive five year terms, held to be for the lessees' lifetimes only); Gleason v. Tompkins, 84 Misc.2d 174, 375 N.Y.S.2d 247 (N.Y.Sup.1975) (successive renewal clause construed as limited by the lifetime of the lessee, and exercisable only by him); Brush v. Beecher, 110 Mich. 597, 68 N.W. 420 (Mich. 1896) (successive renewal clause limited to lifetimes of landlord and lessee).
[7] Thompson on Real Property, Vol. III § 1089.
[8] See Hite v. Carmon, 486 S.W.2d 715 (Ky.1972) (right to successive renewals held to be limited to original lessee only and the continuation of the lessee's business on the premises); George W. Davis & Sons, Inc. v. Raffield, 269 So.2d 383 (Fla. 1st DCA), cert. denied, 275 So.2d 252 (Fla. 1973) (successive renewal clause in a sublease limited to term of main lease); DeSantis v. Kessler, 83 A.D.2d 766, 443 N.Y.S.2d 485 (N.Y.A.D. 4 Dept.1981) (right to renew held limited to the time the original landlord remains the owner of the property); Geyer v. Lietzan, 230 Ind. 404, 103 N.E.2d 199 (Ind. 1952) (renewal clause held to be limited to the landlord's lifetime); Chalkley v. Ward, 119 Ga.App. 227, 166 S.E.2d 748 (Ga.App. 1969) (renewal clause construed as only effective during the life of the lessor).