874 So.2d 631 (2004)
NATIONAL HOME COMMUNITIES, L.L.C. and NHC-FL 13, L.P., Appellants/Cross Appellees,
v.
FRIENDS OF SUNSHINE KEY, INC., et al., Appellees/Cross Appellants.
No. 3D02-3225.
District Court of Appeal of Florida, Third District.
April 14, 2004.
Rehearing Denied June 4, 2004.
*632 William E. Andersen and Lynn E. Wagner and L. Eric Ebbert (Key West), for appellants/cross appellees.
Feldman Koenig & Highsmith and Timothy J. Koenig (Key West); V. McFadyen; William A. Friedlander, Tallahassee, for appellees/cross appellants.
Before SCHWARTZ, C.J., and LEVY and FLETCHER, JJ.
FLETCHER, Judge.
National Home Communities, L.L.C. and NHC-FL, L.P. appeal a declaratory judgment entered in favor of Friends of Sunshine Key, Inc. and numerous individual plaintiffs which determined occupancy rights at a recreational vehicle park. For the reasons set forth herein, we reverse.
National Home Communities, L.L.C., manages Sunshine Key, a recreational vehicle park in Monroe County, on behalf of the landowner, NHC-FL 13, L.P. (Both entities will be referred to collectively as National Home.) Plaintiffs below are Friends of Sunshine Key, Inc., a not for profit company, and numerous individual occupants of RV sites at the park (collectively referred to hereinafter as Unit Owners). A majority of the Unit Owners originally entered into written agreements with the prior owner of Sunshine Key who operated the park between 1988 and 1998. In 1998, National Home acquired Sunshine Key, assuming the prior owner's obligations under the occupancy agreements. Generally, the agreements provide for the Unit Owners to pay an initial site location premium entitling them to select a certain location within the park where they can place their RV.[1] After installation, the Unit Owners were entitled to occupy the site for a certain term, which term could be renewed, although the agreements did not specify how often. The Unit Owner's right to renew was conditioned upon said owner abiding by all applicable regulations and paying an annual occupancy fee. Through the years, the Unit Owners tied down their RVs and added permanent improvements, such as concrete slabs, screened porches, Florida rooms, sheds and tiki huts. The Unit Owners would normally renew their agreements annually maintaining their RVs on the site year-round.
Beginning approximately in 1993, the Code Enforcement Board of Monroe County began citing Sunshine Key for *633 code violations. Included in the list of violations were the unauthorized erection of permanent improvements on the RV sites, and the failure to restrict occupancy to road-ready recreational vehicles. Notwithstanding these citations, the prior owner of Sunshine Key, and National Home, at least for the first few years after it acquired Sunshine Key, continued accepting annual renewal payments and signing renewal documents.
In 2001, National Home commenced plans to redevelop Sunshine Key. The County, however, would not approve the redevelopment plans until the outstanding code violations were resolved. As a result National Home sent letters to all the Unit Owners advising them of the code violations and giving them 30 days to bring their sites into compliance. Unit Owners who did not comply with this request subsequently received a final letter informing them that their occupancy agreements had been cancelled and that they were required to vacate the premises.
The Unit Owners instituted the present action seeking declaratory relief as to their occupancy rights, and National Home counterclaimed for eviction. The Unit Owners claimed inter alia that under the parties' agreement they were entitled to perpetual occupancy subject only to payment of annual occupancy fees and compliance with park regulations. Additionally, they contended that National Home waived any right it may have had to compel compliance with the Monroe Code by its assumption of the prior owner's obligations and prior renewals of the occupancy agreements notwithstanding National Home's actual knowledge of the existing code violations. Finding that it agreed with the Unit Owners on both the perpetuity and waiver issue, the trial court entered final judgment in favor of the Unit Owners.
On appeal, National Home challenges the trial court's conclusions on both of these issues, contending that the agreements did not grant the Unit Owners the right to perpetual renewals, and that in any event, the Unit Owners were in default under their agreements by failing to abide by the provisions of the Monroe County Code, thus entitling National Home to terminate the agreements. National Home claims that the Unit Owners violated the portions of the occupancy agreement which require the Unit Owners to observe and comply with all county and local governmental and municipal laws, statutes, ordinances, rules, regulations, codes, decrees, and zoning regulations. Because their recreational vehicles violated Monroe County Code provisions requiring that recreational vehicles be road ready and subject to tenancies not to exceed six months in duration, Monroe County Code §§ 9.5-4(R-6), 9.5-244, and 9.5-317(b)(9), the Unit Owners were in default of their agreement. On the issue of waiver, National Home argues that neither the defense of estoppel nor waiver is available to the Unit Owners because the parties' agreements contain an anti-waiver clause.
Leases in perpetuity are universally disfavored, thus the courts are loath to construe a right to renewal as perpetual, and will not do so unless the language of the agreement clearly and unambiguously compels them to do so. Generally, the courts have construed such covenants as providing for one renewal only. See Sisco v. Rotenberg, 104 So.2d 365 (Fla.1958); Schroeder v. Johnson, 696 So.2d 498 (Fla. 5th DCA 1997); Sheradsky v. Basadre, 452 So.2d 599 (Fla. 3d DCA 1984), rev. denied, 461 So.2d 113 (Fla.1985); Hutson v. Knabb, 212 So.2d 362 (Fla. 1st DCA 1968). In Sheradsky v. Basadre, this court was asked to construe as perpetual an agreement which stated that the "lease shall *634 automatically renew under the same terms and conditions" set forth for the rental period, unless either party gave written notice within 60 days of the expiration date of their intent not to renew. 452 So.2d at 601. This court concluded that such language did not sufficiently establish an intent to grant such a right.
In the instant case, the trial court found a right to perpetual renewals. However, our review of the relevant paragraphs reveals only the annual renewal statement and various provisions setting forth the manner in which such renewals are to be effectuated. Other than the fact that the agreements herein set forth in more detail the manner in which renewals were to be handled, we find nothing to distinguish the language employed in these agreements from that construed in Sheradsky on the issue of perpetuity. There is no provision in the subject agreements evidencing a clear and explicit right to perpetual renewals.
The result reached by the trial court also cannot be upheld on the theory of waiver or estoppel. The parties' agreement contains an anti-waiver clause which states, in pertinent part:
"No provision of this Agreement shall be deemed waived by either party unless same is expressly waived in a writing signed by the waiving party. No waiver shall be implied by delay or any other act or omission of either party. No waiver by either party of any provision of this Agreement shall be deemed a waiver of such provision with respect to any subsequent matter relating to such provision.... Acceptance of a payment upon the Occupancy Fee by SUNSHINE KEY shall not constitute a waiver of any breach or Default by the RV Owner of any term or provision of this Agreement."
(Site Occupancy Agreement ¶ 22). Florida courts have consistently enforced these types of clauses. See, e.g., Rybovich Boat Works, Inc. v. Atkins, 587 So.2d 519 (Fla. 4th DCA 1991), rev. denied, 599 So.2d 654 (Fla.1992); Gergora v. Flynn, 486 So.2d 5 (Fla. 3d DCA), rev. denied, 500 So.2d 544 (Fla.1986); Raimondi v. I.T. Chips, Inc., 480 So.2d 240 (Fla. 4th DCA 1985); Eskridge v. Macklevy, Inc., 468 So.2d 337 (Fla. 1st DCA), rev. denied, 478 So.2d 54 (Fla. 1985); Philpot v. Bouchelle, 411 So.2d 1341 (Fla. 1st DCA 1982). As stated in Rybovich Boat Works, Inc. v. Atkins, the "defenses of waiver and estoppel [are] defeated as a matter of law by the [anti-waiver] provisions of the contract itself." 587 So.2d at 522. The trial court erred in finding that either waiver or estoppel prevented National Home from terminating the occupancy agreements based on the previous failure to enforce compliance with the Monroe County Code.
The judgment below is reversed and remanded for further proceedings consistent herewith.
NOTES
[1] Some unit owners purchased their RVs directly from the prior owner while others acquired theirs from third parties and had them moved to their site.