# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

BROADMOOR ENTERPRISES, LLC, a Florida limited liability company; CYPRESS MIDWAY, LLC, a Florida limited liability company; MANCHESTER COMMERCIAL LENDING, LLC; FORTALEZA STORAGE, LLC; and BROADMOOR VENTURES, LLC,

Appellants/Cross-Appellees,

v.

SUPER HEAT AND AIR, LLC, a Florida limited liability company,

Appellee/Cross-Appellant.

No. 2D2023-1866

_____

February 20, 2026

Appeal from the Circuit Court for Hillsborough County; Darren D. Farfante, Judge.

Joseph T. Eagleton and Steven L. Brannock of Brannock Berman & Seider, Tampa; Jonathan B. Sbar and Andrea K. Holder of Rocke, McLean & Sbar, P.A., Tampa; and V. Stephen Cohen and John V. Agliano of Bajo Cohen Agliano, P.A., Tampa, for Appellants/Cross-Appellees.

Marie A. Borland, Gregory P. Brown, and Sean P. Mullen of Hill Ward Henderson, P.A., Tampa, for Appellee/Cross-Appellant.


KHOUZAM, Judge.

Arising from a dispute over a commercial lease, this is an appeal of a final judgment and a cross-appeal of a postjudgment order. Appellants/Cross-Appellees (the Developers) are entities affiliated with the developer of an area referred to as Midtown Tampa. Appellee/Cross-Appellant Super Heat and Air, LLC, leased property nearby.

After a four-day bench trial, the court entered a final judgment largely in favor of Super Heat, ruling among other things that Super Heat had properly exercised a purchase option in its lease, that the property was not subject to a certain mortgage, and that a lease on part of the property was invalid. Following the entry of the final judgment, a dispute arose about the scope of the property addressed at trial, and Super Heat moved to amend or enforce the judgment. After an evidentiary hearing on Super Heat's postjudgment motion, the trial court denied it.

Both sides appeal the rulings against them; the Developers contend that the trial court erred in ruling in the final judgment that Super Heat's acquisition was not subject to the mortgage or lease, whereas Super Heat challenges the denial of its postjudgment motion. As we now explain, we find error as to each of the challenged rulings and reverse.

**I: The Manchester Mortgage/Subordination Clause**

Super Heat leased the property from the previous owner, the Darrell A. Dahl Revocable Family Trust. The Super Heat Lease contained an option to purchase stating in relevant part that Super Heat "shall have the option to purchase both the Land and the property . . . provided, however, [Super Heat] may not exercise this option during the lifetime of . . . Jordis H. Dahl, the beneficiary of the Darrell A. Dahl Revocable Family Trust." It also contained a broad subordination clause providing that Super Heat's rights were subordinate to the property owner's right to encumber the property:

This Lease is expressly made subject to and is subordinate to all current or future mortgages and liens upon the Premises or any part thereof by the Landlord or its successors, including purchasers or transferees, and any and all renewals, modifications, and extensions thereof. It is specifically understood and agreed by the parties hereto that this agreement and all rights, privileges, and benefits hereunder are and shall be at all times subject to and subordinate to the lien of any and all mortgages and the accompanying documents executed by the Landlord on behalf of the Premises.

In early April 2021, the Trust sold the property to Cypress Midway, who entered into a mortgage with Manchester Commercial Lending, LLC, for part of the purchase price. Just a few weeks later in late April, Jordis Dahl died. Super Heat exercised its purchase option on May 7. A dispute then arose over whether Super Heat validly exercised the purchase option and, if so, whether Super Heat would take the property subject to the Manchester Mortgage.

Ultimately, the trial court found that Super Heat's exercise of the purchase option was valid and that Super Heat would not take the property subject to the mortgage. It reasoned that the purchase option held priority over the Manchester Mortgage based on Florida's general law governing lien priority. The court further found that it was "wholly inequitable" to subordinate Super Heat's purchase option "to an infinite amount of mortgage debt encumbering the Property." The court did not find that the mortgage itself was fraudulent or otherwise invalid.

On appeal, the Developers no longer challenge the validity of Super Heat's exercise of the purchase option. But they maintain that it must take the property subject to the Manchester Mortgage. We review this question of contract interpretation de novo. *See Seritage SRC Fin., LLC v. Town Ctr. at Boca Raton Tr.*, 397 So. 3d 44, 46 (Fla. 4th DCA 2024).

3

In interpreting any contract, "the text is supreme." *Prop. Registration Champions, LLC v. Mulberry*, 373 So. 3d 675, 679 (Fla. 5th DCA 2023). "Where the language of a contract is plain and unambiguous, it controls—full stop." *Id.* This is because the actual language of the contract is the best evidence of the parties' intent. *Ebanks v. Ebanks*, 198 So. 3d 712, 715 (Fla. 2d DCA 2016). "Provisions in a contract should be 'construed in the context of the entire agreement' and read 'in a way that gives effect to all of the contract's provisions.' " *Famiglio v. Famiglio*, 279 So. 3d 736, 740 (Fla. 2d DCA 2019) (quoting *Retreat at Port of Islands, LLC v. Port of Islands Resort Hotel Condo. Ass'n*, 181 So. 3d 531, 533 (Fla. 2d DCA 2015)). At the same time, " '[i]t is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties,' . . . or, in the guise of interpretation, relieve a contracting party from the consequences of a bad bargain." *Id.* (alteration in original) (first quoting *Barakat v. Broward Cnty. Hous. Auth.*, 771 So. 2d 1193, 1195 (Fla. 4th DCA 2000); and then citing *Prestige Valet, Inc. v. Mendel*, 14 So. 3d 282, 283 (Fla. 2d DCA 2009)).

The plain language of the Super Heat Lease unambiguously provides that the entire lease agreement—expressly including "all rights, privileges, and benefits [t]hereunder"—is subordinate to "any and all" future mortgages upon the premises by the landlord or its successors. That necessarily includes the purchase option. There is no carve-out for the purchase option, or certain types of mortgages, or anything else.

The general law regarding lien priority cannot override the plain language of the parties' specific agreement here. Super Heat agreed to this unambiguous and extremely broad subordination clause and is bound by it. Although the trial court sought to relieve Super Heat of the consequences of its bargain, courts may not rewrite an unambiguous

4

provision, even one found in hindsight to be "inequitable."  The court thus erred in finding that Super Heat would take the property free of the Manchester Mortgage where Super Heat expressly agreed otherwise.

## II: The Fortaleza Lease/Super Heat's Renewal Rights

Before Super Heat exercised its purchase option, Cypress Midway entered into a lease of part of the property with Fortaleza Storage to begin in September 2021, at the conclusion of one renewal term of Super Heat's Lease.  The trial court ruled that the Fortaleza Lease was invalid because the Super Heat Lease actually provided for two renewal terms.

The renewal clause of the Super Heat Lease provided as follows:

> Option to Renew.  Provided Tenant is not in default under any of the terms, provisions or covenants of this Lease, <u>Tenant shall have the option to extend the Term of this Lease for additional three year periods (the "Extension Term") to commence immediately upon the expiration of the initial term of this Lease</u>, upon the same terms and conditions contained in this Lease, with the exception that <u>the monthly rent shall increase to Six Thousand and No/100 Dollars ($6,000.00)</u>.  In order to exercise the option to extend the term of this Lease, Tenant shall notify Landlord in writing no less than ninety (90) days <u>prior to the expiration of the initial term</u> that it is exercising its option to extend the term of this Lease. Tenant's Option to extend the term of this Lease shall be null and void and no further force and effect if Tenant fails to notify Landlord in writing of its desire to extend the term of this Lease within the time period required above. Furthermore, Landlord, in its sole and absolute discretion, may declare Tenant's option to extend the term of this Lease null and void and no further force and effect if Tenant, at the time it provides written notice of its desire to extend the term of this Lease or at any time thereafter prior to the scheduled commencement date of the Extension Term, is in default under any of the terms, provisions or covenants of this Lease. The <u>Fixed Rent for the Extension Term</u> shall be Six Thousand and No/100 Dollars ($6,000.00) per month, payable on the first day of each calendar month during the Extension Term.

(Emphases added.)  Our interpretation of this provision, including whether it is ambiguous, is de novo.  *Seritage*, 397 So. 2d at 46.

Unlike the subordination clause, this renewal provision is ambiguous.  Although it refers to "additional three year periods" in the plural, it also provides for only one rent increase and references only a singular "Extension Term," repeatedly described as stemming from "the initial term," of which there can be only one.  There is no mention in the provision of renewals being tied to Ms. Dahl's lifetime.  Nevertheless, the court relied on parol evidence to determine that Super Heat was entitled to continuous renewals during Ms. Dahl's lifetime or, at least, two renewals.  This too was error.

Florida law treats renewal clauses differently from many other lease provisions.  In particular, "[l]eases in perpetuity are universally disfavored, thus the courts are loath to construe a right to renewal as perpetual, and will not do so unless the language of the agreement clearly and unambiguously compels them to do so."  *Chessmasters, Inc. v. Chamoun*, 948 So. 2d 985, 986 (Fla. 4th DCA 2007) (citing *Nat'l Home Cmtys., LLC v. Friends of Sunshine Key, Inc.*, 874 So. 2d 631, 632 (Fla. 3d DCA 2004)).  "Generally, the courts have construed such covenants as providing for one renewal only."  *Id.*; *see also Sisco v. Rotenberg*, 104 So. 2d 365, 368 (Fla. 1958) (rejecting the contention that a lease provision authorized indefinite renewals, saying "[t]his argument of course must fail, since most courts have taken the view a covenant to renew is satisfied by one renewal thereof, du[e] to their disfavor of perpetuities and perpetual leases").  Under this settled law, where the language of a renewal provision does not "clearly exhibit an intent to provide for more than one renewal," the number of renewals must be limited, regardless of

6

what the parties actually intended. *Chessmasters*, 948 So. 2d at 987 (quoting *Sheradsky v. Basadre*, 452 So. 2d 599, 603 (Fla. 3d DCA 1984)).

The Fifth District's opinion in *Schroeder v. Johnson*, 696 So. 2d 498 (Fla. 5th DCA 1997), upon which the Fourth District relied in *Chessmasters*, is instructive. In *Schroeder*, the Fifth District concluded that the trial court had erred in considering parol evidence to determine the intent behind an ambiguous renewal term. 696 So. 2d at 499. Even though the parol evidence showed that the parties did intend for the tenant to continue to be able to renew during her lifetime, only two renewal terms were appropriate because the lease itself used the language "successive five (5) year periods" in the plural. *Id.* at 498-99. The Fifth District specifically held that "[s]ince there is no <u>unambiguous and explicit language in the lease</u> evincing the intent to grant perpetual renewals, or even renewals for [the tenant]'s life, we hold that the lease provides for only two successive five-year renewals—*i.e.*, a maximum potential lease term of fifteen (15) years." *Id.* at 499 (emphasis added).

Similarly here, the court erred in considering parol evidence and ruling that the lease entitled Super Heat to more than one renewal term where the lease language itself failed to unambiguously do so. Like in *Schroeder*, the court should have cut the renewals off at the lowest number expressly called for by the language of the agreement—in this case, one. And because Super Heat had only one renewal, the Fortaleza Lease for the term following that one was not invalid on this basis.

### III: Lot 182, the Tree Parcel

The cross-appeal concerns only whether the property that Super Heat purchased includes Lot 182, a strip of trees in the middle of the geographic area in question. This dispute arose postjudgment as the parties were about to close on the court-ordered transaction.

7

Shortly before the closing, the Developers claimed for the first time that they did not have to give up this lot because it had a different street address than the ones at issue at trial. Super Heat accused the Developers of having the street address changed after the trial in an attempt to evade the judgment against them ordering them to transfer the property. In response, the Developers did not dispute that the address was changed posttrial on the Property Appraiser's website but maintained that they could withhold Lot 182 because records from the City of Tampa reflected another address on its website pretrial.

After a hearing, the trial court ruled that Super Heat failed to prove "that [the Developers] created a new property address out of thin air" because the address had existed in the City's records for years—even though the trial had focused on separate Property Appraiser records that the court expressly relied upon in the final judgment. The court now ruled that Lot 182 was not in fact part of Super Heat's purchase.

The resolution of this vigorous postjudgment squabble is straightforward, based on undisputed facts. The final judgment expressly rules that Super Heat's purchase option covered two parcels, referred to throughout the litigation as Parcels A and B—a ruling which is unchallenged on appeal. At oral argument in this court, the Developers finally admitted that Lot 182 is in fact on Parcel B, a concession that is amply supported by the record. Thus, the postjudgment finding contradicts both an unchallenged part of the final judgment and the record evidence. Regardless of the changing street address, Lot 182 is undisputed to be a part of Parcel B, the ownership of which is not a question that has been brought before this court.

Reversed and remanded for proceedings consistent with this opinion.

8

LaROSE, J., Concurs.

ATKINSON, J., concurs in part and concurs in result only in part.

ATKINSON, J., concurring in part and concurring in result in part.

     I concur in Part I and III of the majority opinion. I respectfully concur in result only in Part II of the majority opinion.

_____

Opinion subject to revision prior to official publication.